**UNITED STEELWORKERS of America, Plaintiff,**

v.

**ENTERPRISE WHEEL AND CAR CORPORATION, Defendant.**

Civ. A. No. 895.

United States District Court
S. D. West Virginia,
at Huntington.

Dec. 13, 1958.

James P. Clowes, Wheeling, W. Va., and Carney M. Layne, Huntington, W. Va., for plaintiff.

William C. Beatty and E. Jackson Boggs, Huntington, W. Va., Fitzpatrick, Marshall, Huddleston & Bolen, Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action brought under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, commonly known as the Taft-Hartley Act, regarding a grievance arbitration provision in a collective bargaining agreement which was in effect between the plaintiff union and defendant employer from April 5, 1956, to midnight April 4, 1957. On October 21, 1957, after a full hearing, this Court granted plaintiff's motion for summary judgment and ordered the defendant, pursuant to the terms of the agreement, to submit to arbitration a grievance involving the discharge of eleven employees on January 18, 1957. After the entry of that order, the grievance involved here was submitted by the parties to an umpire or arbitrator, who held hearings and rendered a "Decision and Award." That award, dated April 10, 1958, requires defendant to reinstate the aggrieved employees to their position of January 18, 1957, and further awards reimbursement of wages for all time lost because of their wrongful discharge, with the exception of a 10-day suspension period, less such amounts received for other employment since 10 days after January 18, 1957. Defendant has refused to abide by the award and, in this same action, upon the motion of the plaintiff, the Court has ordered defendant to show cause why it has not complied with the arbitrator's decision. Defendant has filed an answer setting forth its position, and after the filing of extensive briefs and oral argument, the matter has been submitted for decision.

Defendant urges first that this Court is without jurisdiction to act upon plaintiff's motion to show cause, now that the arbitrator has rendered his decision, because the motion seeks to enforce an award which defendant reads as being uniquely personal to the individual grievants, under the rationale of Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 1955, 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510. That case did not involve an arbitration provision, but held that a union had no standing to initiate an action in federal court for unpaid wages allegedly due under the provisions of a collective-bargaining contract to some 4,000 employees represented by the union. In three separate opinions, the majority of the Supreme Court held that § 301 of the Taft-Hartley Act does not authorize suits by unions for uniquely personal rights of the individual employees such as compensation.

The decision of this Court leading to the entry of the order of October 21, 1957, compelling arbitration, was based on three Supreme Court decisions handed down in June, 1957. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972; General Electric Company v. Local 205, United Electrical, Radio and Machine Workers of America, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028; and Goodall-Sanford, Inc., v. United Textile Workers of America, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031. Those cases held that United States District Courts are given jurisdiction by § 301 of the Taft-Hartley Act to decree specific performance of an agreement to

arbitrate all grievances, when that agreement is contained in a collective-bargaining contract. Plaintiff urges here that it is manifestly a part of this Court's power, under those cases, to require acquiescence in the decision of the arbitrator, onec the Court has ordered a party to such a collective-bargaining agreement to submit a grievance to arbitration.

Defendant points to one case from a district court which held that notwithstanding the Lincoln Mills, General Electric, and Goodall-Sanford cases of 1957, the Westinghouse case of 1955 prevents a union from bringing an action in district court to enforce an arbitrator's award. Textile Workers Union of America v. Cone Mills Corp., D.C.M.D.N.C. 1958, 166 F.Supp. 654. But defendant admits that there is a split of authority on this point, for the case of Amalgamated Clothing Workers of America v. A. L. Kornman Co., D.C.M.D.Tenn., December 17, 1957, 33 C.C.H. Labor Cases, par. 71, 166, held that a district court has jurisdiction under § 301 of the Taft-Hartley Act to enforce an arbitrator's award, despite the holding of the Westinghouse case, under the authority of the Lincoln Mills and companion decisions. These district court cases, Cone Mills and Kornman, are not in point here, however, because in both instances the parties had voluntarily submitted the grievance to arbitration (apparently in accordance with provisions of collective-bargaining contracts) before any action was brought in the district court. In the case at bar, on the other hand, there was no voluntary submission of a grievance to arbitration, but rather defendant only submitted the problem to arbitration after an order of this Court required it to do so.

It may well be that once an arbitration award has been made pursuant to a voluntary submission by the parties to arbitration which finally determines the rights of the parties to a grievance, particularly in situations like that in the Cone Mills case, supra, where the award concerned itself only with wages due individuals in the form of vacation payments or unemployment benefits, the union has no standing to sue, but rather the affected individuals must press their personal claims. I do not need to decide that question here, for that is not our case, although it is interesting to note that here the case is being prosecuted by the union primarily to obtain reinstatement of the workers with the monetary award a secondary consideration, and since at the time this grievance began the plaintiff union was the exclusive bargaining agent of the affected employees, the plaintiff might have enough interest in the action to bring suit even if the arbitration award were the result of voluntary submission to arbitration.

But it must be kept in mind that this action was originally brought to compel defendant to submit the grievance to arbitration, and this Court ordered the defendant to

"within 35 days from the date hereof, commence specific performance of Step Four of Article III of the agreement between Enterprise Wheel and Car Corporation and the United Steelworkers of America, dated April 4, 1956, and to expeditiously proceed with the procedure therein set forth, * * *."

Having partially complied with that order, it is too late for defendant to now urge that this Court has no jurisdiction to compel defendant to go through with arbitration. It would certainly be unfair to allow a party to go step by step through the process of arbitration, only to ignore the decision when it turns out unfavorable to that party.

As quoted above, this Court ordered defendant to proceed with the arbitration procedure of Step Four of Article III. Defendant complied with (or the parties waived) all the provisions of Step Four except the vital last sentence, which reads: "The decision of the umpire shall be final and binding on the parties." I conclude that it was inherently a part of the order of October 21, 1957, that defendant accept as final and

binding the decision of the umpire, or arbitrator. To hold otherwise would have the order requiring a futile act. As stated in the recent case of Item Company v. New Orleans Newspaper Guild, 5 Cir., 256 F.2d 855, 856, decided June 26, 1958, the Supreme Court recognized in the Lincoln Mills and companion cases that § 301 of the Taft-Hartley Act created a new area of federal substantive law and " * * * declared that in this new field of law, rules are to be devised by the federal courts to determine enforceability of collective-bargaining-contract clauses for arbitration of disputes arising 'between an employer and a labor organization'." In arriving at the rules to be applied by the courts in this regard, certainly Congress did not intend that federal courts should have the power to require employers and unions to submit their differences to arbitration, but those same courts should have no power to see that the parties accept the arbitrator's decision. The Lincoln Mills case found a Congressional policy favoring the peaceful settlement of labor disputes by the use of arbitration, and I think it completely consonant with the policy to hold that once this Court has compelled arbitration the Court has power to see that its order is fully carried out.

I therefore reject defendant's contention that this Court is without jurisdiction because personal rights of individuals are affected. This Court had jurisdiction, under § 301 as interpreted by the Lincoln Mills case, of this action when it originated because a union controversy was involved. The union and the employer were the only parties to the collective-bargaining contract which this Court ordered specifically performed with regard to arbitration. The arbitrator's award is entitled, "In the Matter of Arbitration Between Enterprise Wheel and Car Corporation and United Steelworkers of America, AFL-CIO, Local Union No. 4513." Defendant has not carried out all the acts required of it by the order of October 21, 1957. I think it is quite clear, under all the circumstances, that this Court continues to have jurisdiction of this controversy between the union and the employer.

Defendant's second jurisdictional defense is equally groundless. It is contended that the order of October 21, 1957, has been complied with and the case has been finally concluded. But as discussed previously, the only fair interpretation which can be placed upon the order is that it requires defendant to proceed through *all* the process of arbitration as set forth in Step Four of the contract, including acceptance of the arbitrator's award.

■ That does not mean that the arbitrator must necessarily have gone through the accounting process of computing precisely how much back pay each aggrieved employee is entitled to receive, or how much must be deducted by reason of wages earned elsewhere during the period these employees were wrongfully deprived of employment. A good faith compliance with the award by both parties eliminates the necessity of the arbitrator considering such petty, ministerial computations. The award requires the defendant to reimburse certain employees for

> "all time actually lost from work which they would otherwise have had from the Company at the regular rate of pay for each grievant, less the ten day suspension period and less such amounts as each has received for other employment since ten days after January 18, 1957."

The award is quite specific, and I find no merit in defendant's argument that it is so incomplete or imperfect that it does not constitute a final and definite award.

Defendant strongly urges that the arbitrator exceeded his authority in this case when he ordered reinstatement and back pay to the eleven grievants extending past April 4, 1957, which was the termination date of the contract. Defendant cites authorities such as Williston on Contracts (1937 ed.) Sec. 1359, p. 3815; United Protective Workers Lo-

cal No. 2 v. Ford Motor Co., 7 Cir., 223 F.2d 49, 48 A.L.R.2d 1285; O'Dell v. Humble Oil & Refining Co., 10 Cir., 201 F.2d 123, and several older cases, for the proposition that damages for wrongful discharge under a collective-bargaining contract are limited to the period with the earliest date on which the employee could lawfully be discharged. Defendant reasons that on the day this contract expired, the defendant could have discharged these employees and not be subjected to damages for the discharge, and that, therefore, no award can properly be made granting back pay or reinstatement past that date when defendant could lawfully have discharged these workers. An investigation of all the cases cited, however, reveals that in each of them the discharged employees accepted the termination of their employment and sued for damages for the wrongful discharge without seeking reinstatement.

■ In the case at bar, if any or all of the eleven employees would have accepted their discharge as final and chosen to sue their employer for wrongful discharge, then these cases cited by the defendant might apply and if the discharge were found to be wrongful the employee would be limited in his measure of damages to back pay from the date of discharge to the expiration date of the contract. In this instance, however, the eleven employees have not accepted their discharge as final, but the union has used the grievance-arbitration mechanism of the collective-bargaining contract to gain reinstatement of the wrongfully-discharged employees. The Court is informed that the men involved here are somewhat elderly men, to whom seniority is of utmost importance and to whom back wages are only a comparatively incidental factor. The reinstatement is the moving factor of the union's interest and right in this case.

To allow the defendant to only reimburse the employees up until April 4, 1957, would be to allow the defendant to profit unfairly from its own wrongdoing. If the men had not been unjustly discharged, it must be assumed that their employment would have continued to date; until reinstated, these employees continue to suffer loss of wages by virtue of the defendant's improper action irrespective of any expiration of the contract. This same point was raised in Western Union Division, Commercial Telegraphers Union v. Western Union Telegraph Co., 83 N.L.R.B. Reports 238, where the employer was prohibited by Sec. 222(f)(7) of the Merger Act (Communications Act of 1934, as amended) 47 U.S.C.A. § 222(f)(7), from furloughing employees within four years of its merger with Postal Telegraph. The company furloughed an employee within the four-year period, illegally. The full National Labor Relations Board ordered reinstatement and back pay for the employee, even though the four years had passed by the time the Board handed down its decision. The Board stated:

"In this case, Heppe's loss, after the 4-year period, of the job held by him before his furlough, with the consequent loss of wages, is a direct result of the Respondent's wrongful conduct, unless it be assumed that the Respondent would have furloughed him immediately upon the expiration of that period. Such an assumption would be wholly speculative on the present record and is one, therefore, in which we are unwilling to indulge.

"Under these circumstances, we conclude that the remedy recommended by the Trial Examiner, viz., reinstatement and back pay until reinstatement is offered, is appropriate * * *."

And in Victor Metal Products Corp. of Delaware, 106 N.L.R.B. Reports 1361, an employee was found to have been unlawfully discharged by her employer on January 23, 1953. The union's contract expired March 15, 1953, and the employee was reinstated May 4, 1953. The Board found that the union had caused the wrongful discharge, and ordered back pay to be assessed against the union. The union contended it was

not liable for any back pay after the expiration of its contract, but the Board held:

"The purpose of the Board's remedial orders is not punitive, but to restore the situation 'as nearly as possible, to that which would have obtained but for the illegal discrimination.' As a result of the Respondent Union's unlawful conduct, Bidema [the employee] suffered a loss of wages from January 23, 1953 to May 4, 1953. The Trial Examiner's recommended order merely requires the Union to make her whole for this loss—in other words, to restore Bidema to the situation which would have obtained but for the illegal discrimination practiced against her.

"It is true that the Union's collective bargaining contract with the employer ended on March 15, 1953. But this did not alter the fact that the Union had unlawfully caused the Employer to discharge Bidema and that the loss of wages suffered by her from March 15 to May 4 resulted from that unlawful act. * * * As between the victim of the unlawful conduct and the wrongdoer, we believe that the loss suffered by the former should equitably be borne by the latter."

If defendant here had utilized the grievance machinery contained in the collective-bargaining agreement, without undue delay occasioned by its refusal to arbitrate and its refusal to accept the arbitrator's decision, these employees could probably have been reinstated before the contract expired. The protagonist in the delay in settling the dispute of January 18, 1957, has been the defendant, who cannot now complain of the nearly 23 months of back pay awarded the employees who were improperly discharged. I find that the arbitrator did not exceed his authority under the contract in this case.

I conclude that this Court has jurisdiction over this matter, under § 301 of the Taft-Hartley Act; that the plaintiff union has a standing in this Court to see that the arbitration agreement to which it is a party is carried to fruition; and the Court having once taken jurisdiction should dispose of all questions arising in the case, particularly since to dismiss this action would result either in a multiplicity of suits by individual employees or a failure of justice altogether. The Lincoln Mills case establishes that the substantive law in cases of this type is to be fashioned by federal courts from the policy of our national labor laws, and "The range of judicial inventiveness will be determined by the nature of the problem." 353 U.S. at page 457, 77 S.Ct. at page 918. It would appear that requiring the defendant here to comply with the arbitrator's findings appropriately and logically follows the teaching of the Lincoln Mills case. The arbitrator's decision requiring defendant to reinstate employees and reimburse them for back pay past the termination date of the contract is in keeping with the policy of our labor laws under the National Labor Relations Board cases cited earlier. It is therefore the ruling of this Court that defendant corporation must promptly abide by the valid, complete and binding decision and award made by the arbitrator; that this is a part of the specific performance ordered by this Court on October 21, 1957; and that plaintiff is now entitled to further relief in this case in the form of an additional order specifically compelling defendant to forthwith accept and abide by the final decision and award of the arbitrator.

Counsel may prepare an appropriate order in accordance with the views expressed in this opinion.