Ernest FREDERICK and Catherine Ann Frederick, Plaintiffs,

v.

UNION CARBIDE CORPORATION, a Corporation, Defendant.

No. 547–F.

United States District Court
N. D. West Virginia,
at Clarksburg.

Jan. 6, 1959.

Joseph T. Michael and James Cann, Clarksburg, W. Va., for plaintiffs.

James M. Guiher and Kingsley R. Smith (Steptoe & Johnson), Clarksburg, W. Va., for defendant.

HARRY E. WATKINS, Chief Judge.

This is an action for damages to plaintiffs' grocery store in Anmoore, Harrison County, West Virginia, arising out of a flood of August 5, 1956. Plaintiffs contend that defendant's negligence in maintaining an improper floodgate and wire mesh fence over a stream near plaintiffs' store impeded the flow of debris-carrying flood water in that stream, causing the water to dam up and rise into plaintiffs' store. Defendant denies negligence and contends that the flood was an unprecedented act of God.

#### Findings of Fact.

Evidence tending to support both theories of how plaintiffs' damage occurred has been presented to the Court, sitting without a jury, with a sharp conflict in the testimony of some of the witnesses. In resolving the differences in the testimony, in addition to the Court taking into consideration the usual matters of the credibility of the witnesses, their interest in the case, their ability to know the things about which they testified, the reasonableness of their testimony, etc., the Court has been aided here by plats, drawings and some excellent photographs of the area, including some pictures taken the day after the flood, and by a personal view of the site. The topography and other physical features of the area here are particularly important in attempting to reconstruct the flood, inasmuch as the eye witnesses differed in their description of the phenomenon of flood waters inundating portions of this small community.

Defendant operates in Anmoore an industrial plant engaged in the manufacture of carbon, with at times up to 1,500 employees. Since 1941, as a security measure defendant has maintained a heavy factory fence of the familiar type around its premises, consisting of 6 foot high ⅜ inch stiff mesh wire having open diamond shaped spaces of about 2 inches at their widest point. This wire is fastened to steel pipe posts set in concrete, and on the top of each post a rod is attached holding at an angle 3 or 4 barbed wires. The portion of the fence involved here runs parallel with the front of plaintiffs' store, on the opposite side of a 60 foot wide highway. Anmoore Run is a small stream which runs north and south parallel with the side of plaintiff's store, goes under the highway through a concrete bridge, and under the fence into defendant's plant. There it joins another stream, called Anmoore Branch for the purpose of this case, which extends the entire length of the plant from east to west. At the time of the flood in question here, defendant maintained a 13½ by 5 foot floodgate in the Run, consisting of 6 inch wooden slats 7 inches apart on a frame which was hinged to a pipe crossing the stream. A 30 inch

space between the top of the gate and the bottom of the mesh fence was also filled in with 6 inch slats having a 7 inch space between them.

Taking into consideration all the evidence, I find that on August 5, 1956, a great quantity of water flowed from various hollows into Anmoore Run from two hard rainstorms, and the Run overflowed its banks—as it often had done in prior years. The movement of the stream became swift and large amounts of debris began to move with the stream, including logs, boards, grass, cans, bottles, telephone poles, foot bridges, wooden auto bridges, etc. As this debris got to the floodgate and fence of defendant opposite plaintiffs' store, it was unable to continue downstream because of the gate and fence, but instead collected against those obstructions forming a virtual dam so that the water level came up to a point about 3 feet from the top of the wire mesh fence. A lake was thus formed, extending along the road for some 700 feet and the water came up 32 to 34 inches in plaintiffs' store. After several hours, the fence buckled over from the weight and pressure of the stream, at which time the water receded from the vicinity of plaintiffs' store very quickly. After the debris went over the bent-down fence and entered defendant's plant property, merging with Anmoore Branch, some of the debris collected downstream at a similar floodgate and fence at the west end of the plant, and that fence also was bent over by the stream.

I must reject the contention of defendant that the floodgate and fence near plaintiffs' store had no effect on the water from Anmoore Run. The physical and topographic features of the area, the photographs in evidence here, and the testimony of disinterested witnesses refute the theory urged by defendant that water from the smaller Anmoore Branch (which drained a comparatively small area) backed up the vast amount of water in Anmoore Run (which drained a large area from several directions).

After this flood of August, 1956, the defendant constructed two new buildings and changed the position of its main gate so that a watchman is now on duty at all hours within easy sight of the point where Anmoore Run flows into the plant property, and the floodgate has been removed and the fence reconstructed in a different position. While I do not consider these changes any indication of negligence in having the gate and fence as originally placed, I do think it important to consider the testimony of several witnesses that since the removal of the floodgate and the minor change in the location of the fence there have been floods in that area comparable in size to the 1956 flood yet there has been no backing-up of the water in Anmoore Run, and no water entered plaintiffs' property. It is undisputed that no water from any previous flood had entered plaintiffs' store, although there had been numerous floods over the years of similar intensity. I find that the damage caused plaintiff on August 5, 1956, was proximately caused by defendant's negligence in maintaining an improper floodgate and fence. I further find, under all the evidence, that this flood was not unprecedented in size, and was not an act of God relieving defendant of responsibility for plaintiffs' damages.

It was stipulated by the parties that as a result of this flood, plaintiffs suffered damages of $315 to their meat freezer, $337.98 to their vegetable freezer, and lost $2,000 in merchandise. In addition, there is uncontradicted evidence that plaintiffs' building was damaged in this flood in the amount of $1,780.80. I therefore find that as a result of defendant's negligence, plaintiffs suffered damages of the total of these figures, or $4,433.78.

### Conclusions of Law.

As stated above, I do not find the flood of August 5, 1956, to have been an unprecedented act of God, as that term has been defined by the West Virginia Supreme Court of Appeals in a

flood case, Atkinson v. Chesapeake & Ohio Railway Co., 74 W.Va. 633, 82 S.E. 502, 503: "That which reasonable human foresight, pains, and care should have prevented can not be called an act of God." But even if this flood were unprecedented, defendant is not relieved of responsibility for its negligence under well-settled West Virginia law which applies in this diversity action. As stated in the case of Mitchell v. Virginian Railway Co., 116 W.Va. 739, 183 S.E. 35, Syl. 3, "One obstructing a natural watercourse will not be excused unless an act of God is the sole and proximate cause of the injury * * *." That principle has been reaffirmed in Riddle v. Baltimore & Ohio Railroad Co., 137 W.Va. 733, 73 S.E.2d 793, 34 A.L.R.2d 1228, and Thrasher v. Amere Gas Utilities Co., 138 W.Va. 166, 75 S.E.2d 376. In the present case, even if the flood were an act of God, defendant's negligence concurred with the flood, the damage caused by the negligence is inseparable from any damage which might have been caused by the flood alone, and defendant must respond in damages for the entire amount of plaintiffs' loss.

Defendant's duty in a case of this type, and the legal effect of its breach of that duty, is very well set forth in Atkinson v. Chesapeake & Ohio Railway Co., supra:

"* * * duty to exercise reasonable care in the maintenance of a culvert [here a floodgate and fence] commensurate with the size of the water course and with the area and character of the country that it must naturally drain. So we may say that it was not an act of God that injured plaintiffs, but the act of defendant in neglecting to provide that which prudence dictated as necessary for the passage of the water * * * in the natural course at times of heavy rains. * * * If defendant had done that which reasonable care and foresight dictated it should do, plaintiffs would not have been injured even though the rain was so extraordinary that the sending of it must be considered an act of God. It was human intervention that primarily caused the injury." 82 S.E. at page 503.

It is the judgment of his Court that plaintiffs shall recover the sum of $4,433.78 from defendant for damages suffered August 5, 1956. Counsel may prepare a final judgment order in accordance with the views expressed in this opinion.