**Application of Nathaniel M. MINKOFF, as Treasurer of Joint Board of Dress and Waistmakers' Union of Greater New York, an unincorporated association, Petitioner,**

v.

**SCRANTON FROCKS, INC., Richard Frocks, Inc., and Sherri Dress, Inc., Respondents,**

**To confirm the award of Harry Uviller, Esq., as Arbitrator, rendered pursuant to the terms of an agreement between Scranton Frocks, Inc., and Dress Makers' Joint Council, dated April 18, 1958, and pursuant to the terms of an agreement between Richard Frocks, Inc. and Dress Makers' Joint Council, dated April 18, 1958.**

United States District Court
S. D. New York.
May 8, 1959.

Schlesinger & Bloom, New York City, for petitioner.

Fellner & Rovins, New York City, for respondents. Morris J. Fellner and Leonard W. Wagman, New York City, of counsel.

PALMIERI, District Judge.

On March 4, 1959 the petitioner Minkoff, as Treasurer of the Joint Board of Dress and Waistmakers' Union of Greater New York (Union), secured an order from the Supreme Court of the State of New York, New York County, directed to the respondent corporations, and requiring them to show cause why an arbitrator's award should not be confirmed and a judgment entered thereon. The order was issued pursuant to N.Y. Civil Practice Act, § 1461. It was received by two of the respondents on March 6, 1959, and by one on March 7, 1959. The award granted damages to the Union, on behalf of its Health, Welfare and Severance Fund, on behalf of the Retirement Fund of the Dress Industry, and on behalf of the Dress Makers' Joint Council. The petition on which the order was secured alleged that the respondents had entered into agreements with the Dress Makers' Joint Council, an unincorporated labor organization,[1] and that the agreements contained a provision for arbitration of disputes between the parties. While the petition does not so allege in terms, it is obvious from the facts set forth in the petition, and there is no dispute, that the damages were awarded for violation of these agreements. The award also contained injunctive provisions. On March 17, 1959 the respondents filed a petition

---

1. The petition alleges that two of the respondents entered into agreements with the Council: Scranton Frocks, Inc. and Richard Frocks, Inc. The award determined that these two corporations and Sherri Dress, Inc., the third respondent, "have at all times been operated * * * as a single, integrated production effort and that Sherri Dress, Inc., as a subsidiary and affiliate of both or either, is obligated together with Scranton Frocks, Inc. and Richard Frocks, Inc. under the terms of the agreements entered into by Scranton Frocks, Inc. and Richard Frocks, Inc., and because of their operations and relationship with each other, all three firms are jointly and severally liable * * *."

The petition further alleges that, pursuant to the agreements, the Union is the proper agency to enforce them on behalf of the Council and on behalf of the two Funds.

of removal to this Court, pursuant to 28 U.S.C. § 1446 (1952).

Petitioner has moved for an order remanding the matter to the state court. 28 U.S.C. § 1447(c) (1952). In resisting this motion, respondents set forth a number of grounds on which they base their claim that this cause is within the original jurisdiction of this Court and that it was, therefore, properly removed. 28 U.S.C. § 1441(a) (1952). Of these, only one need be considered: respondents' assertion that jurisdiction is vested in this Court by Section 301(a) of the Labor-Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185(a).[2]

Basically, whether the proceeding to confirm the award of the arbitrator is within the jurisdictional grant of Section 301(a) depends, in this case,[3] on whether the proceeding is a suit "for violation of [a contract] between an employer and a labor organization representing employees in an industry affecting commerce as defined in" the Act. Preliminarily, it should be noted that the petition in the state court does not allege the status of the Union as "representing employees in an industry affecting commerce." The removal petition does, however, contain such an allegation and it is undisputed. Where the plaintiff has a right to relief, either under federal law, or under state law as an independent source of that right, it may be that the federal court, on removal, may not look beyond the face of the initial pleading in the state action to determine whether a federal-question is presented. Cf. Gully v. First National Bank in Meridian, 1936, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70. If the proceeding to confirm the arbitrator's award is a suit for violation of a contract, however, and if the status of the Union is that set forth in Section 301(a), the exclusive source of the petitioner's right to relief is federal law. Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 456–457, 77 S.Ct. 912, 923, 1 L.Ed.2d 972. When the petition for removal shows that the right to relief is exclusively federal, it is permissible to look to the petition to establish that fact. Ingraham Co. v. Local 260, International Union of Electrical, Radio and Machine Workers, D.C.D.Conn.1959, 171 F.Supp. 103, 105. Otherwise a plaintiff could artfully defeat the right of the defendant to have the cause determined in a federal forum. Fay v. American Cystoscope Makers, Inc., D.C.S.D.N.Y.1951, 98 F. Supp. 278.[4] Accordingly, I hold that the

2. This section reads as follows:
"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

3. Attacks have been made on the jurisdiction of the federal courts to enforce arbitrators' awards, based on the decision in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510. See cases cited in note 8, infra. No such attack is made here. The award here at issue directed respondents to make payments on behalf of the Council as damages "by reason of the non-union production of respondents;" to make payments on behalf of

the Funds; and to cease receiving certain work, failing to pay the monies due to the Funds, failing to file certain reports with the Funds, and failing to permit examination of their records by the Union.

4. It has been held that the claim that a proceeding such as this is governed by Section 301 is a defense to the action based on federal pre-emption. International News Service v. Gereczy, D.C.S.D. N.Y.1958, 160 F.Supp. 5, 7. And it has been suggested that removal would be permissible only after the state court had determined that federal law was the source of the petitioner's rights and required him to amend his pleading accordingly. Note, 72 Harv.L.Rev. 354, 368 (1958). But I know of no requirement under New York practice which would require the petitioner to allege the source of the law on which he predicates his demand for relief, and the petition in this case alleges none. It would be quite possible for the state court not to make

petition on removal sufficiently establishes the status of the Union as that covered by Section 301(a), and I turn to a consideration of whether the proceeding initiated in the state court is a suit for a violation of a contract within the meaning of that Section.

Were the interpretation of Section 301 (a) *res nova* it might be held that an action to enforce an arbitrator's award for violation of a contract, is not a suit for a violation of that contract. Such a holding might be justified on a verbal level. International News Service v. Gereczy, D.C.S.D.N.Y.1958, 160 F.Supp. 5. Even on that level there is some difficulty with such a holding, for the entire proceeding, from its commencement before the arbitrator, to the enforcement of an award, is a suit upon the contract. Cf. Marchant v. Mead-Morrison Mfg. Co., 2 Cir., 1928, 29 F.2d 40, 43, certiorari denied, 1929, 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565.

In any event, decision here must be had in light of the constructions already authoritatively placed upon Section 301 (a), and remembering that a statute such as this is not "a wooden set of self-sufficient words." Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 379, 79 S.Ct. 468, 484, 3 L.Ed. 2d 368. "There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis; and I certainly do not wish to add to the barrels of ink that have been spent in logging the route. As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final." Guiseppi v. Walling, 2 Cir., 1944, 144 F.2d 608, 624, 155 A.L.R. 761 (L. Hand, J., concurring), affirmed sub nom. Gemsco, Inc. v. Walling, 1945, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921. See also, San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 1959, 359 U.S. 236, 239, 240, 79 S.Ct. 773; United States v. Shirey, 1959, 359 U.S. 255, 260–261, 79 S.Ct. 746.

■■ The rights of the parties to a collective bargaining agreement with a union representing employees in an industry affecting commerce, arise under federal law. Textile Workers Union of America v. Lincoln Mills of Alabama, supra, at loc. cit. It was the policy of Section 301(a) that these rights should be enforceable in the federal courts, id., 353 U.S. at pages 452–455, 77 S.Ct. at pages 915–917, and it is obvious from the face of the statute that plenary actions to enforce these rights may be brought in the federal courts. See, e. g., Shirley-Herman Co. v. International Hod Carriers, etc., 2 Cir., 1950, 182 F.2d 806, 17 A.L.R.2d 609. It was also the policy of Section 301(a) to make arbitration agreements, when included in such collective bargaining agreements, enforceable in the federal courts; and a suit to compel such arbitration may be brought in the federal courts. Textile Workers Union of America v. Lincoln Mills of Alabama, supra. Furthermore, once a suit has been brought in a federal court to compel arbitration, that court has jurisdiction to enforce the award;[5] and it is doubtful whether any other court would have jurisdiction to do so.[6]

---

any finding on that subject until it rendered its decision on the merits, if then. In any event, the purpose of the removal is not "to protect the federal law which pre-empts state law," 72 Harv.L.Rev. 368, but to protect the right of the respondents to have their case heard in a federal forum. Fay v. American Cystoscope Makers, Inc., D.C.S.D.N.Y.1951, 98 F.Supp. 278.

5. United Steelworkers of America v. Enterprise Wheel & Car Corp., D.C.S.D. W.Va.1958, 168 F.Supp. 308.

6. "Having commenced the suit in the state court on an application for the appointment of the arbitrator, it would not have been permissible for the plaintiff to have proceeded later for its confirmation in the District Court of the United States upon the theory of a diversity of citizenship." Marchant v. Mead-Morrison Mfg. Co., 2 Cir., 1928, 29 F.2d 40, 43, certiorari de-

The consequences, accordingly, of holding that a party's rights under a collective bargaining agreement, when first determined by an arbitrator, cannot be enforced in the federal courts, would be these: (1) where the parties [7] desire to have their rights ultimately enforced in a federal court, they will not provide for arbitration of their disputes in the first instance, thus forcing the disputes into the courts from the beginning, in which case it is clear that Section 301(a) vests jurisdiction in the federal courts; or (2) where arbitration has been provided for, one of the parties will refuse to comply with the provision, thus forcing a suit in the federal courts to compel arbitration, with enforcement of the award then tested in the federal courts under the doctrine of United Steelworkers of America v. Enterprise Wheel & Car Corp., D.C.S.D.W.Va.1958, 168 F. Supp. 308.

Neither of these consequences would be consonant with the purposes of Section 301(a) and in the absence of a clear indication that the section is to be interpreted as petitioner contends, that interpretation must be rejected.[8]

Petitioner advances three arguments to defeat the removability of this proceeding even if it is, as I hold, one which could have been brought here originally. (1) Petitioner argues that the respondents are guilty of "bad faith" in effecting the removal. The facts on which this charge rests are these: The order to confirm the award was returnable March 16, 1959. On that date the respondents appeared before the state court and requested an adjournment. This request was denied and respondents were then granted, at their request, permission to file papers (the affidavits do not reveal whether the nature of these "papers" was stated to the state court) by 4:00 P.M. on March 17, 1959. The removal petition was filed on March 17, 1959. I do not understand how a party can be guilty of "bad faith" in exercising the statutory right of removal, in any event absent an agreement not to exercise that right. If the petitioner means to argue that respondents waived their right of removal, and assuming that the doctrine of waiver still exists under the 1948 revision of the removal statute,[9] I do not believe that the request for an

---

nied, 1929, 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565. See also, Hetherington & Berner, Inc. v. Melvin Pine & Co., 2 Cir., 1958, 256 F.2d 103, 107 ("It is difficult to see any justification or legal basis for the defendants to apply to the state court [to vacate an arbitrator's award where the federal court had previously taken steps that were tantamount to an order to arbitrate].").

7. Once it is determined that a proceeding on the arbitrator's award is a suit within the meaning of Section 301(a), both parties have the right to have the matter determined in a federal forum. The moving party, by instituting proceedings under that Section; the opponent by removing the proceedings under 28 U.S.C. § 1446 (1952).

8. Of the reported cases since the Supreme Court's decision in Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, only International News Service v. Gereczy, supra, note 4, has denied the jurisdiction of the federal courts, under Section 301(a), to treat with an arbitrator's award. This

jurisdiction has been upheld, since Lincoln Mills, in A. L. Kornman Co. v. Amalgamated Clothing Workers of America, 6 Cir., 1959, 264 F.2d 733; United Textile Workers of America A.F.L.-C.I.O. v. Textile Workers Union, 7 Cir., 1958, 258 F.2d 743 (agreement between two unions); Ingraham Co. v. Local 260, International Union of Electrical Radio and Machine Workers, D.C.D.Conn.1959, 171 F.Supp. 103; Food Handlers Local 425, etc. v. Pluss Poultry, Inc., D.C.W.D.Ark., 158 F.Supp. 650, 655, affirmed, 8 Cir., 1958, 260 F.2d 835 and Textile Workers Union of America v. Cone Mills Corp., D.C.M.D.N.C.1958, 166 F.Supp. 654, 658 (dictum). See also, United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, note 5.

Jurisdiction has been denied, since Lincoln Mills, under the theory of the Westinghouse decision, supra, note 3, in Textile Workers Union of America v. Cone Mills Corp., supra, and Textile Workers Union of America, C.I.O. v. Bates Mfg. Co., D.C.D.Me.1958, 158 F. Supp. 410. See note 3, supra.

9. See Note, 100 U. of Pa.L.Rev. 1067 (1952).

adjournment, or for an extention of time to file papers, or the failure of the respondents to advise the state court of their intention to remove, if such an intention then existed, constitute such a waiver. Cf. Markantonatos v. Maryland Drydock Co., D.C.S.D.N.Y.1953, 110 F. Supp. 862, 864. A contrary ruling would permit a petitioner, in an action such as this, to shorten the twenty-day statutory period in which a respondent may determine whether to remove, by seeking to have the return date of the order fixed, as it was here, less than twenty days after it is served. (2) Petitioner's contention that a proceeding to confirm the award of an arbitrator, under N.Y.Civil Practice Act, § 1461, is not a "civil action" within the meaning of 28 U.S.C. § 1441 (1952), is without merit. Hetherington & Berner, Inc. v. Melvin Pine & Co., 2 Cir., 1958, 256 F.2d 103; Davenport v. Procter & Gamble Mfg. Co., 2 Cir., 1957, 241 F.2d 511. (3) Petitioner contends that the removal petition is untimely. As noted above, the petition was filed within twenty days of the dates respondents received the order to show cause which had been issued by the state court. Petitioner's argument is bottomed on its contention that the time to remove began to run on December 3, 1958, when respondents received a notice of intention, issued by petitioner, to conduct the arbitration. It appears that, under New York law, the special proceeding governed by Article 84 of the Civil Practice Act was commenced at that time. N.Y.Civil Practice Act, § 1459; e. g., Shahmoon Industries, Inc. v. Day & Zimmermann, Inc., 1957, 10

Misc.2d 117, 169 N.Y.S.2d 950; cf. Marchant v. Mead-Morrison Mfg. Co., supra at loc. cit. The federal courts, however, in determining what actions are removable, a federal question, are not "concluded by the view of the state court as to what is a suit within the statutes." Id. 29 F.2d at page 42. 28 U.S.C. § 1441(a) (1952) provides for the removal of "any civil action *brought in a State court* * * *." (emphasis added). The proceeding, while it may have been commenced by the service of the notice to arbitrate, was not in the state court at that time but was pending before the arbitrator.[10] At the time the notice was served it could not be predicted whether the proceeding would ever come before any court.[11] It is brought in the state court when that court is first asked to participate in the proceeding, for instance, either by a motion to compel or to stay the arbitration, N.Y.Civil Practice Act, §§ 1450, 1458, subd. 2, or by a motion to confirm or vacate the award, N.Y.Civil Practice Act, §§ 1461, 1462. Until one of these steps is taken, or the court is in some other way requested to intervene, the proceeding is not removable. Since the petition to remove was filed within twenty days of the first application to the court, in this case the motion to confirm the award, the removal was timely. Cf. Marchant v. Mead-Morrison Mfg. Co., supra. It is one of the purposes of arbitration that it serve as "an integral part of the system of self-government."[12] It would be destructive of this purpose, and would needlessly crowd the Court's dockets with many

10. None of the state cases, holding that a special proceeding is commenced at the time the notice to arbitrate is served, hold that the proceeding is in the court at that time. The decisions have been made in various contexts, such as a holding that a New York proceeding to arbitrate was commenced, by service of the notice, prior to the commencement of a Delaware suit on the contract which was the subject of the arbitration. Shahmoon Industries, Inc. v. Day & Zimmermann, Inc., 1957, 10 Misc.2d 117, 169 N.Y.S.2d 950.

11. The affidavit of the General Manager of the Union, on the motion to remand, states that "[i]n the year 1958, in the dress industry alone, 2435 complaints were filed with the Impartial Chairman. Of these, 556 proceeded to award. Most of these were confirmed on motion under New York State Law. The others were complied with without confirmation." (Emphasis in original.)

12. Shulman, Reason, Contract and Law in Labor Relations, 68 Harv.L.Rev. 999, 1024 (1955).

matters never to be acted upon,[13] if a party were required to file a petition for removal, with its accompanying bond, 28 U.S.C. § 1446(d) (1952), as soon as he was served with a notice to arbitrate. It is soon enough for a party to act to save his right to be heard in a federal forum when it becomes apparent, for the first time, that court intervention is required.

I wish only to add, in light of certain contentions in the briefs, what should be obvious: that in holding that this action might have been commenced here and was properly removed here, I am not holding that the state court was without jurisdiction to proceed if the petition for removal had not been filed. Such cases as San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, supra, are not here relevant. The jurisdiction conferred by Section 301 upon the federal courts is not exclusive. The state courts must, of course, in determining the controversy, apply federal law. Ingraham Co. v. Local 260, International Union of Electrical, Radio and Machine Workers, D.C.D. Conn.1959, 171 F.Supp. 103, 106. Nor am I passing on the source of the law by which the form of the reviewing procedures is to be determined. See Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 353 U.S. at pages 456–457, 466, 77 S.Ct. at pages 917–918, 925–926; Engineers Association v. Sperry Gyroscope Co., etc., 2 Cir., 1957, 251 F.2d 133, 136–137, certiorari denied 1958, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762.

Accordingly, the motion to remand is denied.

The respondents have made two cross-motions. The first is for an order staying the petitioner from proceeding with the state action.[14] The motion is denied, for the requested relief is unnecessary. 28 U.S.C. § 1446(e) (1952).[15] Respondents also move for an enlargement of the time within which they may file their "answer." This motion, and petitioner's opposition thereto, is based on the misconception that respondents' opposition to confirmation of the award is to be manifested by an answer. Under both the state and federal law, the proceeding to confirm the award is brought on by motion, as was done here. N.Y. Civil Practice Act, § 1461; 9 U.S.C. §§ 6, 9 (1952). Accordingly, under each law, respondents' opposition will be by opposing affidavits, In re Worcester Silk Mills Corp., D.C.S.D.N.Y.1927, 50 F.2d 966, 967, and the time within which these are due is established by reference to the date on which the motion is heard. N.Y. Rules of Civ.Prac. 64; Fed.R.Civ.P. 6 (d), 28 U.S.C. The proceeding having been removed from the state court, the time for hearing fixed therein no longer controls. No hearing having been noticed in this Court, respondents' opposing affidavits are not yet due and no enlargement of time is needed. The motion is, accordingly, denied.

So ordered.

---

13. On the basis of the figures quoted in note 11, supra, almost five petitions for removal would have to be filed in this Court for every one proceeding in which the Court would be called upon to act, if the petition had to be filed when the notice to arbitrate was served.

14. The motion, as drawn, seeks an order "staying all proceedings in the above cause in the Supreme Court of the State of New York, County of New York, and staying all proceedings on the part of the Petitioner and his attorneys * * *." I must assume that the emphasized portion of the quotation is also meant to be limited to the state court action.

15. Respondents' attorney has filed an affidavit, stating that a copy of the removal petition was filed with the clerk of the state court at 3:00 P.M. on March 17, 1959.