Dana COUCH, Katherine Thompson, Johnnie Bell Gorman and A. O. Hobbs, Individually and as Officers and in behalf of the Members of Local 2037, International Brotherhood of Electrical Workers, AFL-CIO, Plaintiffs,

v.

PRESCOLITE MANUFACTURING COR-
PORATION, Defendant.

No. E.D. 893.

United States District Court
W. D. Arkansas,
El Dorado Division.

Feb. 21, 1961.

738

Eugene R. Warren, of Warren & Bullion, Little Rock, Ark., for plaintiffs.

Robert C. Compton, of Brown & Compton, Chester Green, El Dorado, Ark., for defendant.

HENLEY, District Judge.

■ Plaintiffs, representatives of a labor organization having a collective bargaining agreement with defendant, seek to compel the latter to submit to arbitration under said agreement with respect to certain changes in wages, working conditions and the like which the Union has proposed to defendant, but upon which the parties have not been able to agree.[1] Taking the position that

1. The action was commenced in the Chancery Court of Union County, Arkansas, and the defendant removed the case here on the basis of section 301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185(a). Since the complaint alleges a breach of the collective bargaining agreement, the cause was removable. Swift & Co. v. United Packinghouse Workers of America, D.C.Colo., 177 F.Supp. 511; Tool and Die Makers Lodge No. 78, International Ass'n of Machinists, AFL–CIO v. General Electric Co., D.C.Wis., 170 F.Supp. 945.

it is not required to arbitrate the particular matters that plaintiffs desire to have arbitrated, defendant has filed a motion to dismiss the complaint on the ground that it does not state a claim upon which relief can be granted. Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S. C.A.

Attached to the motion as exhibits are copies of the collective bargaining agreement and of the changes which the Union proposes to incorporate into the contract. Since the Court has considered those materials in addition to the bare allegations of the complaint, the motion will be treated as one for summary judgment as authorized by Rule 12(b). The motion has been submitted on written briefs.

The contract in suit covered an initial period of two years beginning November 1, 1958, and ending October 31, 1960. By its terms the agreement continues in effect from year to year thereafter unless amended, modified, or terminated as provided therein. The contract appears to be not unusual in form. It covers wages, hours, and working conditions, and contains provisions for the settlement of disputes and the arbitration of grievances.

Section 2 of Article I of the contract provides that either party desiring to amend, modify, or terminate the agreement must notify the other party in writing at least 60 days in advance of expiration of the contract; that whenever such notice is given, the nature of desired changes is to be specified in the notice; and that until agreement is reached in the matter of such proposed changes, the original terms of the agreement shall remain in full force and effect.

Section 3 of the same article provides that the contract shall be subject to amendment "at any time by mutual consent of the parties" thereto, and that any amendment agreed upon shall be reduced to writing, signed by the parties, and approved by the international office of the Union.

Section 4 of Article I reads as follows:
"The union and the company agree that there shall be no strikes, boycotts, lock-outs, slow-downs, curtailment of work or restriction of production by employees during the life of this agreement and that in the event differences or disputes should arise between the company or union or should any local trouble of any kind arise in the plant, there shall be no suspension of work by employees òn account of such differences, but shall be processed as stated in 'Grievance Procedure' of this agreement."

Article III sets up a grievance procedure for the settling of any differences which might arise between the Union and the defendant "as to interpretation or meaning of any written provision of this agreement." The procedure set up consists of a series of four steps, the first three of which are to consist of discussions and negotiations.

The fourth step is actually in two parts. If a grievance is not settled within five days by means of discussions between defendant's plant manager and the business agent of the Union, the matter is referred to a Joint Conference Committee, consisting of three representatives of the employer and three representatives of the Union, and if that committee is unable to reach an agreement, the grievance is to be submitted to the Industrial Relations Council of the National Electrical Contractors Association and of the International Brotherhood of Electrical Works for arbitration, and the decision of the Council shall be final and binding on both parties.

As stated, the contract was to become effective as of November 1, 1958. The agreement was actually signed on February 9, 1959. It appears that at that time the parties were in a dispute as to the wages to be paid to the different classes of workers mentioned in the contract, and by a separate written agreement the parties submitted the question of wage rates to the industry council which has been mentioned for the purpose of arbitration. That question was arbitrated by the council, and a schedule of wages was fixed and put into effect, the award

being made retroactive to February 9, 1959.

Subsequently, the Union proposed certain changes in the original contract, including substantial wage increases, and requested the defendant to negotiate with respect thereto. Negotiations not having resulted in an agreement, this suit was filed to compel arbitration with respect to the amendments desired by the Union.

■ There is now no question that under section 301(a) of the Labor-Management Relations Act a provision for arbitration contained in a collective bargaining agreement may be specifically enforced by the federal courts provided that the matter in dispute is an arbitrable issue under the contract. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972; see also General Electric Co. v. Local 205, United Electrical, Radio & Machine Workers of America, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028; Goodall-Sanford, Inc. v. United Textile Workers, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031. Since those decisions were handed down, such specific performance has been granted at least twice by federal courts sitting in Arkansas. Glass Bottle Blowers Association of United States and Canada, AFL-CIO v. Arkansas Glass Container Corporation, D.C.Ark., 183 F.Supp. 829; International Union of Operating Engineers (AFL-CIO), Local No. 381 v. Monsanto Chemical Co., D.C.Ark., 164 F.Supp. 406.

■ Before ordering specific performance, however, the court is required to ascertain whether the issues which the plaintiff desires to submit to arbitration are arbitrable under the collective bargaining agreement. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steel Workers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed. 2d 1432; Chauffeurs, Teamsters & Helpers Local Union No. 795 v. Yellow Transit Freight Lines, 10 Cir., 282 F.2d 345; Brass and Copper Workers Federal Labor Union No. 19322, AFL-CIO v. American Brass Co., 7 Cir., 272 F.2d 849. International Tel. & Tel. Corporation v. Local 400, Professional, Technical & Salaried Division, Intern. Union of Electrical, Radio & Machine Workers, D.C.N.J., 184 F.Supp. 866.

Article III of the contract with which the Court is concerned here was obviously designed to cover ordinary employee grievances which might be expected to arise during the life of the agreement, and plaintiffs do not appear to contend that said article itself makes the existing dispute as to changes in the contract subject to arbitration.

What the plaintiffs do contend is that section 4 of article I, which is sometimes called the "no-strike" clause and which refers to the arbitration provisions set forth in article III, is broad enough to make arbitrable disputes relative to amendments to the contract which the Union desires to have adopted. The defendant contends, on the other hand, that such proposed amendments were never intended to be the subject of arbitration, and that to compel an arbitration of the pending dispute would be to compel the defendant to yield to the decision of the arbitrators on matters which should be the subject of voluntary negotiation.

■ The scope of an arbitration clause in a collective bargaining agreement depends, in the last analysis, upon the intent of the parties as expressed in the contract. While the parties to such an agreement may stipulate that disputes arising from the desire of either of the parties to amend or renegotiate shall be submitted to arbitration, such a stipulation must be clearly and unambiguously expressed in the contract. See in this connection Annotation appearing in 24 A.L.R.2d 752 et seq., and particularly pages 757–759 and 771–774.

■ The contract involved in this case does not clearly and unambiguously express an intention that demands for amendments be submitted to arbitration. On the contrary, the Court is convinced that it was the intention of the parties that arbitration should be limited to dis-

putes involving the meaning and application of the contract as written at any particular time, and should not include disputes which might arise out of the desire of either party to reopen or amend the agreement.

While section 2 of article I gives to either party the right to bring up the matter of reopening and modifying the contract, it seems clear to the Court that such modifications as might be effected were to be the result of negotiations between the parties and not forced upon either party by means of arbitration.

In this connection section 3 of article I provides that the agreement should be subject to amendment "by mutual consent" of the parties, and that any amendment agreed upon should be reduced to writing, signed by the parties, and approved by the international office of the Union. Had the parties to the agreement desired to submit disputes relative to amendments to the contract to arbitration, they would hardly have used the language just mentioned, which is inconsistent with the idea that such disputes should be arbitrated, both sides to be bound by the result. An examination of the authorities indicates that when parties to collective bargaining agreements desire to make disputes relative to amendments and modifications arbitrable they know how to say so. See cases cited in 24 A.L.R.2d at pages 772–774; see also the arbitration clause involved in Boston Printing Pressmen's Union v. Potter Press, D.C.Mass., 141 F.Supp. 553, affirmed 1 Cir., 241 F.2d 787, certiorari denied 355 U.S. 817, 78 S.Ct. 21, 2 L.Ed. 2d 34. And it must be remembered that arbitration of disputes relative to contract amendments is not always to the advantage of the party desiring amendment.

In plaintiffs' brief attention is called to the fact that the parties actually arbitrated the dispute as to wages, which dispute was going on when the basic contract was signed in February 1959. But, the Court does not infer from that fact that the parties intended for future wage disputes or disputes over amendments to the contract in other respects to be arbitrated. As noted, the parties entered into a special agreement to negotiate the existing wage dispute, and it is at least arguable that the parties by their action in entering into a separate agreement recognized that such an arbitration was not provided for in the basic contract.

As to section 4 of article I, it seems to the Court that while the "no-strike" provisions contained in that section are couched in broad terms, they relate to disputes and differences arising under the existing contract and arbitrable under article III, and are not inconsistent with the provision of section 3 of article I which provides for amendment by "mutual consent."

But, entirely aside from the foregoing, there is another impediment to the plaintiffs' obtaining the relief which they seek. In Boston Printing Pressmen's Union v. Potter Press, supra, the agreement specifically provided that the contract should be subject to renegotiation, and that if the parties could not agree on amendments, their differences should be arbitrated. The Union made demands for amendments, and after a failure of negotiations brought suit for specific performance, which was denied by the district court. As indicated, the Court of Appeals affirmed, and the Supreme Court denied certiorari.

In rejecting the plaintiffs' demand for specific performance, the district court in Pressmen's drew a sharp distinction between arbitration of disputes relating to amendments to collective bargaining agreements, which amendments would have principally prospective application, which type of arbitration the court called "quasi-legislative," and arbitration of disputes which have arisen with regard to the meaning and application of existing contracts, which type of arbitration was referred to as "quasi-judicial." It was held by both the district court and the court of appeals that neither the Labor-Management Relations Act nor the United States Arbitration Act, 9 U.S.C.A. § 1 et seq., as now drawn, authorizes the federal courts to enforce specifically

agreements calling for "quasi-legislative" arbitration. This Court concurs in the reasoning and conclusion of both courts in the Pressmen's case, and is of the opinion that the result there reached is applicable here.

As stated, the Court treats defendant's motion as a motion for summary judgment under Rule 56, 28 U.S.C.A., and concludes that this case presents no genuine issue as to a material fact, and that defendant is entitled to judgment as a matter of law. The motion will be granted, and the complaint dismissed.