**AUSTIN MAILERS UNION NO. 136,**
**Plaintiff,**

v.

**NEWSPAPERS, INC., Defendant.**

**Civ. A. No. 1314.**

United States District Court
W. D. Texas,
Austin Division.

June 12, 1963.

FISHER, District Judge.

This action having been considered by the Court on Defendant's Motion to Dismiss the Complaint, and alternatively, on Motions for Summary Judgment filed by both Plaintiff and Defendant, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Austin Mailers Union No. 136, herein called "Mailers Union", is an organization in which employees participate and which exists as the collective bargaining representative of employees of Newspapers, Inc., in a bargaining unit in and about the mailing room of the Austin American-Statesman in Austin, Texas.

2. Newspapers, Inc., herein called "Employer", is publisher of The Austin American and The Austin Statesman, a morning and evening daily newspaper, respectively, at its office and plant in Austin, Texas.

3. Mailers Union and Employer entered into a collective bargaining contract effective from July 15, 1960, which contract contained the following provisions with regard to the duration of the agreement.

"This contract and scale of wages shall, unless changed by mutual agreement, be in effect from July 15, 1960, for a term of two (2) years, ending July 15, 1962, with the exception of opening for wages after one year from the effective date, and shall continue thereafter within the limitations herein set forth. Either party hereto desiring to propose a new contract to become effective on or after the expiration date of this agreement, shall notify the other party in writing of its wishes sixty (60) days prior to the expiration date of this agreement, and accompany such notice with written statement in detail of the changes desired. The respondent party may, within fifteen (15) days, formulate a counter proposal setting forth the

conditions it desires to establish. If no counter proposal be filed, the existing contract shall be considered to be the respondent party's counter proposal. If notice is not given as above provided, this contract shall run from year to year until terminated or opened for negotiations by the procedure hereinbefore described sixty (60) days before any succeeding anniversary date of expiration."

4. One year from its effective date the union reopened the contract for negotiation of general wage scales, which negotiations were carried on between the parties until March 7, 1962, the date of the last meeting between representatives of the publisher and the union at which there was discussion of the subject of general wage scales until after the contract had expired.

5. On May 12, 1962, the union submitted a proposal for a new contract to become effective on or after July 15, 1962.

6. On May 14, 1962, the publisher submitted its counter proposal for the changes it desired.

7. Negotiations concerning a new contract continued between the parties from time to time until August 14, 1962, at which time the union made written demand for arbitration of the alleged dispute concerning wage scales.

8. The July 15, 1960—July 15, 1962, contract between the parties contained the following pertinent provisions with regard to arbitration:

"(a) A Joint Standing Committee of four members shall be appointed: Two members of said committee to be named by the Publisher, and two members by the Union. In case of vacancy in the said Joint Standing Committee from any cause, said vacancy shall be filled immediately by the appointment of a new member by the party in whose representation on the Committee the vacancy occurs.

"(b) To the Joint Standing Committee shall be referred for settlement all disputes arising out of the operation of this agreement, all disputes regarding the interpretation of any portion of this agreement, all disputes regarding discharged men, and any and all disputes arising during the negotiations of any subsequent agreement. The Joint Standing Committee must meet within ten (10) days (except in discharge cases which shall be five (5) days) from the date on which either party hereto, through its authorized representative, notifies the other party in writing that a meeting is desired, and shall proceed forthwith to settle any question before it. Such a decision is to be final and binding on both parties to this contract."

9. At no time prior to July 15, 1962, did the union or any representative thereof make written request for arbitration, the first such communication being dated August 14, 1962.

10. There was no agreement between the parties, express or implied, to extend the duration of the July 15, 1960—July 15, 1962, contract after its expiration by its own terms on July 15, 1962.

11. Plaintiff's complaint seeking specific performance of the arbitration provisions contained in the July 15, 1960—July 15, 1962, contract was filed on October 4, 1962.

CONCLUSIONS OF LAW

1. The collective bargaining contract between the parties is a contract between an employer and a labor organization representing employees in an industry affecting commerce.

2. Negotiations with regard to future wage scales present questions which are quasi-legislative rather than quasi-judicial in character.

3. The United States Arbitration Statute does not apply to quasi-legislative matters but is concerned only with the enforcement of quasi-judicial awards directed at the ascertainment of facts in a past controversy and at the prescription of recoverable damages or other suitable awards for that which has been broken not for that which is to be built.

4. The right to compel arbitration depends upon a valid and existing collective bargaining contract providing for arbitration and upon compliance with the contractual specifications relative thereto.

5. The submission of a proposal for a new contract by the union on May 12, 1962, and the publisher's counter proposal of May 14, 1962, prevented the automatic continuation of the July 15, 1960—July 15, 1962, contract.

6. The July 15, 1960—July 15, 1962, contract expired by its own terms on July 15, 1962.

7. There was no valid and existing contract between the parties on August 14, 1962, when the union first attempted to enforce the arbitration provisions of the July 15, 1960—July 15, 1962, contract.

8. This court has no jurisdiction to enforce arbitration under an agreement which terminated prior to compliance with the contract terms requiring arbitration.

Let judgment be entered accordingly.

### ORDER AND JUDGMENT

This cause having been heretofore taken under advisement on Defendant's Motion to Dismiss or in the alternative, for summary judgment, and the court having considered the pleadings and briefs filed herein, and due deliberation having been had, and findings of fact and conclusions of law of the court having been prepared, dated and filed on this 12th day of June, 1963, said Motion to Dismiss is allowed on the ground that the court does not have jurisdiction over the dispute between the parties and on the further, alternate and independent ground that the arbitration agreement which Plaintiff is seeking to enforce has no force and effect because the contract between the parties expired on July 15, 1962, prior to any effort on the part of the Plaintiff to enforce the alleged contractual rights relative to arbitration, said Motion to Dismiss is allowed or alternatively, as authorized by Rule 12(b),

Federal Rules of Civil Procedure, summary judgment is granted to Defendant because of the failure of the complaint to state a claim upon which relief can be granted, and it is therefore

Ordered that Defendant's Motion for Summary Judgment be, and the same is granted, and it is further

Ordered that Plaintiff's Motion for Summary Judgment be, and the same is overruled, and it is further

Ordered that this ruling be filed on this the 12th day of June, 1963.