**M. K. & O. TRANSIT LINES, INC.,**
Appellant,

v.

**DIVISION NO. 892, AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA,**
Appellee.

No. 7237.

United States Court of Appeals
Tenth Circuit.

May 31, 1963.

Rehearing Denied July 17, 1963.

James L. Kincaid, Tulsa, Okl. (Robert A. Huffman, Tulsa, Okl., and Karl H. Mueller, Fort Worth, Tex., were with him on the brief), for appellant.

Herman Sternstein, Washington, D. C. (I. J. Gromfine, and William B. Peer, Washington, D. C., were with him on the brief), for appellee.

Before PICKETT and SETH, Circuit Judges, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

This is an appeal by an employer of labor, M. K. & O. Transit Lines, Inc., from an order of the district court requiring it to proceed to the arbitration of the terms of a new contract following the termination by the plaintiff union of an existing collective bargaining agreement, the trial court having denied the employer's motion for summary judgment and granted the union's motion for summary judgment. The case involves the interpretation of the collective bargaining agreement between the parties and touches upon the reach of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a).

On the 24th of June, 1959, the parties entered into a collective bargaining agreement to be effective from July 1, 1959, to June 30, 1962, both inclusive, and from year to year thereafter, except that at the expiration of the contract term or any renewal thereof either party might terminate the agreement by giving notice to the other party of its intention to terminate or to negotiate changes.[1] The contract further provided that all grievances, disputes and differences between the union and the company, including changes, additions and modifications to any agreement which could not be resolved by negotiations between the parties, should be determined by arbitration as therein provided.

In a letter dated April 27, 1962, the union, through its president, called upon the company to negotiate a new contract and then stated:

"In the event that no agreement has been reached by midnight of June 30, 1962, and if arbitration has not been agreed upon this will also serve due notice that the entire contract now in effect is to be terminated as of midnight June 30, 1962."

No agreement was reached by the parties prior to June 30 with respect to the terms of any new agreement or concerning arbitration, although after serving this notice of termination the union presented a demand for arbitration of the conditions of a new term.

The trial court held that the union "had not terminated" the labor agreement by the letter of April 27, 1962, that the agreement required the employer to arbitrate the conditions of a new contract to be effective after June 30, 1962 and that Section 301 of the Labor-Management Relations Act, beyond grievances under the old contract, vested the court with jurisdiction and authority to arbitrate such new conditions. Judgment was entered ordering the employer to proceed within ten days to arbitration in accordance with the court's decision.

The employer-appellant seeks reversal upon the grounds that the trial court erred (1) in interpreting the contract to

1. Article 43 dealing with the duration of the agreement reads: "SECTION 1. This Agreement shall be in effect from July 1, 1959 to June 30, 1962, both inclusive, and from year to year thereafter, except that at the expiration of the contract term or any renewal thereof either party may terminate the Agreement by giving notice to the other party of its intentions to terminate the Agreement or to negotiate changes in its terms. Notice of the intention of either party to terminate the contract or negotiate changes in its terms shall be in writing and be delivered to the other party not more than ninety (90) and not less than sixty (60) days before the expiration of the contract term or any renewal thereof. If such notice is given by either party, it shall also

contain an offer to meet and confer with the other party for the purpose of negotiating a new contract.

"SECTION 2. If no agreement shall have been reached by the parties within thirty (30) days after such notice, the Federal Mediation and Conciliation Service, and any state agency established to mediate and conciliate disputes within the state, shall be notified of the existence of a dispute, all as provided in sub-section (d) of Section 8 of Labor-Management Relations Act, 1947.

"SECTION 3. The parties hereto agree to meet at least 15 days prior to the anniversary date and continue in negotiations without interruption until the contract is completed, or until arbitration has been agreed upon."

490

indicate an intent to arbitrate new conditions for an additional term rather than only grievances or modifications with reference to the existing term; (2) in holding, even though the contract should be considered to evidence such intent, that the court had jurisdiction to compel defendant to submit to the arbitration of plaintiff's demands for the provisions of a new contract and (3) in holding that the contract was not terminated so as to bar such arbitration of new conditions in any event.

We believe it to have been the manifest intention of the parties that there should be arbitration of demands for the provisions of a new contract under the proper conditions. Clearly it was contemplated that, in the absence of notice of termination, the basic contract should continue from year to year. Article 43 provided in effect that notice of the intention of either party to negotiate changes in its terms for the succeeding year should be given in writing within the period required for notice of termination. Article 7, Section 1, required all additions and modifications, as well as changes, to be arbitrated. Appellant's contention that this obligation to arbitrate did not refer to changes for a renewed period of the contract appears precluded by Article 8, Section 1, reading in part:

"It is agreed by the parties that there shall be no strike by the ASSOCIATION, nor lock-out by the COMPANY during the life of this Agreement. Since it is likewise the intent of the parties that arbitration will be resorted to in the event no agreement on grievances, new or changed provisions is reached for the contract year following the year covered by this Agreement or any extension of it, it is agreed that during such periods of negotiations or arbitration proceedings there will be no strike or lock-out."

Even though we believe that the parties contemplated that there might be arbitration of the conditions of a new contract, we do not reach the question of the court's authority or jurisdiction to require such arbitration. It may well be on the latter question that the rationale of the decision in the Potter Press case [2] should be reappraised in the light of subsequent decisions of the Supreme Court.[3] Our resolution of this important problem, however, should await a case in which it is squarely presented, and it is not squarely presented in this case. Indeed, it is not presented here at all for the renewable term of the contract in connection with which it might have arisen was foreclosed unequivocally and effectually by the union's notice of termination.

It is not unusual in a contract establishing an initial term with automatic renewals to incorporate a provision authorizing either party to preclude a renewal by giving notice within a stated time. Such power reserved to both parties is certainly within ordinary contractual powers under general law. The Labor-Management Relations Act confirms it as

2. Judge Wyzanski, in Boston Printing Pressmen's Union v. Potter Press, D.C. D.Mass., 141 F.Supp. 553, 558 (1956), aff'd 214 F.2d 787, (1 Cir. 1957), cert. denied, 355 U.S. 817, 78 S.Ct. 21, 2 L.Ed. 2d 34, after some hesitation, held that the United States' arbitration statute, in the light of Section 301 of the Labor-Management Relations Act, was concerned only with the enforcement of quasi-judicial awards directed at the ascertainment of facts of a past controversy and at the prescription of recoverable damages or other suitable awards for "that which [had] been broken, not for that which [was] to be built." See also Couch v. Prescolite Manufacturing Corporation, 191 F.Supp. 737 (D.C.W.D.Arkansas, 1961).

3. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Retail Clerks Intern. Ass'n v. Lion Dry Goods, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed. 2d 503 (1962).

to collective bargaining contracts.[4] The subsequent efforts to arrive at an agreement having failed, the termination notice should be given effect.[5]

While the union now seeks to dismiss the letter of termination as perhaps an indiscreet but meaningless gesture, no one has questioned that the president of the union who wrote the letter had authority to act for the union pursuant to the contract. Nor can it be questioned reasonably that he did so act to terminate the contract on behalf of the union. The notice was given within the time and in a manner consistent with both the contract of the parties and the Labor-Management Relations Act. There could have been reasons then valid for so doing. The union thus could have hoped to avoid the risk of being in the very position it asserts the employer is in now—being bound to arbitrate a future contract as a substitute for the collective bargaining process. Be this as it may, by terminating the contract as it had the right to do, the union relieved itself of the consequences that would have resulted if the collective bargaining agreement had not been terminated. It also relieved the employer of those consequences.

If in the letter of April 27 demand simply had been made for the formulation of new conditions during the succeeding period, a contemporaneous or subsequent demand for arbitration, either before the expiration of the old term or during the new term, would have been appropriate, and would have squarely raised the question of whether arbitration of such new conditions could be compelled under Section 301. However, the union apparently did not wish to permit the old contract to continue in effect subject to the arbitration of new conditions. Its express purpose, within the powers reserved to it in the contract itself, was to terminate the agreement effective June 30, 1962 if new conditions or arbitration had not been agreed upon theretofore.

The cases cited by the union to support its claim that the obligation of arbitration survived the notice of termination are not in point. In those cases the sustained arbitration was with reference to accrued though continuing rights under the terminated agreement and did not concern the terms of any new agreement.[6]

The renewal of the contract having been foreclosed by an effective notice of termination, there was nothing to support arbitration proceedings in reference to the terms of the renewal in the absence of an agreement broad enough to justify the submission of the very question of termination to arbitration. No one contends that we have such an agreement here or that arbitration of the question of termination is not clearly precluded by the agreement between the parties.[7] In fact the case was presented by appellant both in this court and before the court below on a theory wholly inconsistent with such a contention.

Very recently we had occasion to reverse the summary judgment granted by

---

4. 29 U.S.C.A. § 158 provides in part as follows: *"Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

"(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification; * * *."

5. Paterson Parchment Paper Co. v. International Brotherhood, 191 F.2d 252 (3d Cir. 1951).

6. See for example United Steelworkers of America v. Enterprise Wheel & Car Corp., D.C.S.D.W.Va., 168 F.Supp. 308 (1958), modified and remanded, 269 F.2d 327 (4th Cir. 1959), aff'd with modifications, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); and General Tire & Rubber Co. v. Local No. 512, etc., 191 F.Supp. 911 (D.C.R.I.1961), aff'd 294 F.2d 957 (1 Cir. 1961). Cf. Connecticut Company v. Division 425, etc., 147 Conn. 608, 164 A. 2d 413 (1960).

7. Compare cases cited in footnote 3 supra.

a trial court because it failed to take into account a determinative factual issue concerning possible contract termination in reference to the obligation to arbitrate.[8] It was said:

"More particularly the question is raised as to whether a notice of termination had been sent to the plaintiff as contemplated in the contract. Thus there remains the very real question whether there is any contract at all, and this is a matter plaintiff asked in its pleading to have decided. It would seem advisable under these circumstances that this question be decided by the trial court as this will decide whether there is in existence an agreement to arbitrate. We cannot require the contractual 'remedy' to be resorted to until the issue before the court as to its very existence is settled."

Here there is no factual problem involved, for it is uncontroverted that a definite notice of termination was given as authorized by the collective bargaining agreement. Its legal effect is purely a question of law for the courts.

It is elementary that in construing a contract effect, if possible, should be given to all of its terms. A consideration of the entire collective bargaining contract before us lends support to our interpretation of the provisions directly involved. If each part is given effect, the agreement between the parties is reasonable and unified. Within the ninety day period specified either party could give notice of termination, for it was neither agreed nor required that they should be bound to each other in perpetuity or indefinitely solely at the will of future arbitrators. Since there was such notice of termination the contract had come to an end upon the expiration of the old term. To say that the obligation to arbitrate new terms and conditions would continue with the same result as if the contract were not so terminated would be to deny any effect whatever to the right of termination which each party reserved.

But if effect is to be given as indicated to the termination provision, all other parts of the contract fall neatly into place. The notice within the ninety day period may be either of "intention to terminate or to negotiate changes in its terms." (Article 43, Section 1 of contract.) If the contract is not terminated and if no changes are demanded, it is automatically renewed for another year. If it is not terminated but if within the ninety day period specified in the contract there is notice given of intention to negotiate changes in the terms of the contract, Article 43 provides for collective bargaining and other efforts to arrive at the changes for the new term (Sections 1 and 2) until (as provided by Section 3) there has been agreement on the changes or an agreement to arbitrate. If there is no agreement on the merits or no agreement to arbitrate, then the provision concerning mandatory arbitration contained in Article 7 comes into operation with respect to "changes, additions or modifications (Sec. 1), including new or changed conditions * * * for the contract year following the year covered by this agreement." (Article 8). As thus construed the contract seems not only logical but sensible. If not so construed, it would be contradictory and in some respects unintelligible.

The contract, including any obligation to arbitrate new terms and conditions for a renewed period, was terminated by the union lawfully, in accordance with the expressed intent of the parties and consistently with the Labor-Management Relations Act.

Reversed.

8. United Mine Workers of America, District 22, v. Roncco, 314 F.2d 186 (10th Cir., 1963).