**WINSTON–SALEM PRINTING PRESS-MEN & ASSISTANTS' UNION NO. 318, Plaintiff,**

v.

**PIEDMONT PUBLISHING COMPANY OF WINSTON–SALEM, Defendant.**

**No. C–186–WS–66.**

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Feb. 7, 1967.

John S. McLellan, of McLellan & Wright, Kingsport, Tenn., and Bradley J. Cameron, Winston-Salem, N. C., for plaintiff.

W. P. Sandridge and David A. Irvin, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

GORDON, District Judge.

This is an action brought by the plaintiff, Winston-Salem Printing Press-men & Assistants' Union, under § 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185, regarding a refusal by the defendant, Piedmont Publishing Company, to arbitrate unresolved

differences under a collective bargaining agreement existing between the parties.

The plaintiff instituted this action on September 27, 1966, to recover damages and to compel the defendant to arbitrate the disputed terms of a new collective bargaining agreement.

On October 18, 1966, defendant filed a motion to dismiss and a motion for summary judgment based on the following contentions:

1. The Court has no jurisdiction to compel arbitration under an agreement which terminates prior to compliance with the contract terms requiring arbitration.

2. The Court has no jurisdiction to compel prospective or quasi-legislative, as distinguished from quasi-judicial, arbitration.

There being no salient facts in dispute, the plaintiff on November 22, 1966, also moved for summary judgment.

Oral argument on both parties' motions for summary judgment was heard December 29, 1966. Having now carefully considered all of counsels' comments, arguments, and contentions, and the reasonable inferences to be drawn therefrom, the Court allows the plaintiff's motion for summary judgment and denies the defendant's motion for summary judgment, and makes Findings of Fact and Conclusions of Law as follows:

## FINDINGS OF FACT

1. On April 13, 1964, plaintiff Union and defendant Company entered into a collective bargaining agreement, § 15 of which provides:

"This agreement shall continue to and including the 31st day of October, 1965, except that either party on thirty days' notice prior to November 1, 1964, may reopen the agreement for the consideration of wage adjustment only.

"Should either party desire to negotiate for changes in any or all of the provisions of this contract as of November 1, 1965, written notice to that effect must be given to the other party on or before September 1, 1965, together with written statement in detail of the changes desired. Otherwise, this agreement shall continue from November 1 through October 31 from year to year and can be changed only by mutual consent or through negotiations started by written notice of one of the parties to the other, on or before September 1st of any succeeding year. Should either party propose such amendments or a new contract, and an agreement proves impossible, the difference or differences shall be arbitrated as herein provided."

Section 1 of the agreement provides a detailed scheme for the arbitration of the differences arising between the parties.

2. By a letter dated August 30, 1965, the plaintiff notified the defendant of its desire to make certain changes and to add new provisions to the agreement. Collective bargaining negotiations were held by the parties on September 29, December 2 and December 3, 1965. A collective bargaining impasse was reached on the latter date and arbitration was mentioned for the first time.

3. On December 7, 1965, plaintiff formally notified the defendant of its desire to submit to arbitration the various provisions of the new collective bargaining agreement then in controversy.

4. Through a letter dated December 13, 1965, from the President of the defendant Company to the representative of the plaintiff Union, the defendant advised the plaintiff that it would not proceed to arbitration on the ground that the collective bargaining agreement had expired on October 31, 1965, and no obligation to arbitrate remained.

## DISCUSSION

The first contention of the defendant, that the duty to arbitrate did not exist after the collective bargaining agreement expired on October 31, 1965, is based on the decision in Austin Mailers Union No. 136 v. Newspapers, Inc., 226 F.Supp. 600 (W.D.Tex.1963), aff'd 329 F.2d 312 (5 Cir. 1964), cert. den.

377 U.S. 985, 84 S.Ct. 1894, 12 L.Ed.2d 753 (1964). There the Mailers Union and the Newspaper entered into a collective bargaining agreement effective July 18, 1960, which contained the following provision with regard to the duration of the agreement:

"This contract and scale of wages shall, unless changed by mutual agreement, be in effect from July 15, 1960, for a term of two (2) years, ending July 15, 1962, with the exception of opening for wages after one year from the effective date, and shall continue thereafter within the limitations herein set forth. *Either party hereto desiring to propose a new contract to become effective on or after the expiration date of this agreement,* shall notify the other party in writing of its wishes sixty (60) days prior to the expiration date of this agreement, and accompany such notice with written statement in detail of the changes desired. * * * If notice is not given as above provided, this contract shall run from year to year until terminated or opened for negotiations by the procedure hereinbefore described sixty (60) days before any succeeding anniversary date of expiration." (226 F. Supp. at 601–602)

(Emphasis added)

The collective bargaining agreement also contained a provision which provided for arbitration of disputes involving the agreement and "any and all disputes arising during the negotiations of any subsequent agreement." (226 F.Supp. at 602)

The Union made a written demand for arbitration on August 14, 1962, and the court held that the right to compel arbitration depends upon a valid and existing collective bargaining contract providing for arbitration and upon compliance with the contractual specifications relative thereto.

The court held that the contract had expired by its own terms on July 15, 1962; therefore, there was no valid and existing contract between the parties when the Union demanded arbitration.

The court concluded by saying:

"This court has no jurisdiction to enforce arbitration under an agreement which terminated prior to compliance with the contract terms requiring arbitration." (226 F.Supp. at 603)

The defendant urges that the similarity of the facts with the instant case must lead to the same conclusion of law. This Court does not agree.

Even though the terms of the collective bargaining agreement in question and the collective bargaining agreement in the *Austin Mailers* case seem similar at first blush, distinctions exist which dictate a different result. In *Austin Mailers,* the duration provision of the contract explicitly stated that the contract would be in effect for two years, from July 15, 1960, to July 15, 1962. This latter date is specifically referred to as the expiration date of the agreement wherein it provided that notification had to be given by "[e]ither party hereto desiring to propose a *new contract* to become effective on or after the *expiration date* of this agreement." (226 F.Supp. at 601) (Emphasis added)

The agreement in question did not spell out a specific period of years that it would exist. The agreement was to continue to and include the 31st day of October, 1965, however this latter date was never referred to as the expiration date. The express language of the contract, wherein it stated, "Should either party desire to negotiate for changes in any or all of the provisions of *this contract* as of November 1, 1965, written notice to that effect must be given * * *," (emphasis supplied) seems to indicate that the contractual relationship between the parties is intended to be a permanent one with a provision for periodic changes in the contract. The *Austin Mailers* case talked of a new contract proposal while this contract talks of changes in the original contract to be effective on the day after, what the defendant contends is, the expiration date. If October 31, 1965, were the expiration date, this provision should talk of a new

contract on November 1, 1965, not changes in the existing contract.

The agreement does not state that it will run until October 31, 1965, at which time it will automatically expire nor does it state that either party may give notice of termination of the contract as of that date. The October 31, 1965, date does no more than fix the duration of the specific terms and conditions of the agreement, after which changes may be made through negotiation and that failing, through arbitration.

The parties evidently envisaged a continuing contractual relationship with periodic negotiations to make desired changes in the basic contract. If negotiations were not fruitful, then arbitration was agreed upon to insure a continuity in the relationship. Arbitration was established as the terminal step in implementing such changes after negotiated agreement had proven impossible. Consequently, a bargaining impasse was made the condition precedent to the invocation of the arbitral process. This arbitration provision had been included in agreements between the parties for more than thirty years; therefore, it can be reasonably assumed that the parties could foresee that the bargaining impasse might occur at any time during negotiations, even after the date set in the contract after which changes could be made. The contract did not state that notice to arbitrate must be given before that certain date. The contract simply stated that should agreement prove impossible then the differences shall be arbitrated.

Here notice to make certain changes was given prior to the required date (September 1, 1965) and bargaining sessions were conducted. The impasse which was a prerequisite to arbitration did not occur until December 3, 1965. Notice to arbitrate given prior to October 31, 1965, as the defendant would require, would be premature and an anticipatory action not required of the plaintiff.

From the history of the previous relationship of the parties and the provisions of the agreement before the Court, the parties intended that arbitration would replace a clash of power if agreement through negotiations failed. The voluntary determination to arbitrate was made at the cost of independent action, but it in turn insured the desired stability in the contractual relationship. When changes in the basic contract were requested and negotiations begun, the contract, by its own terms, remained in existence until all differences were settled and this settlement included arbitration, if necessary. The resort to arbitration would have been premature until all other avenues to agreement had been exhausted. However, when that prerequisite had been met, arbitration was properly requested by the plaintiff, and the duty of the defendant to arbitrate exists under the collective bargaining agreement made on April 14, 1964.

The defendant strongly urges that even if the collective bargaining agreement had not expired, this Court lacks jurisdiction of the case and should grant summary judgment to the defendant because § 301 of the Labor Management Relations Act, 1947, does not confer upon the federal courts jurisdiction to compel prospective or quasi-legislative, as distinguished from quasi-judicial, arbitration. This Court agrees that the arbitration requested, that is the terms of a renewal contract, is properly labeled quasi-legislative or prospective arbitration to use these convenient terms. The defendant relies heavily on Boston Printing Pressmen's Union v. Potter Press, 141 F.Supp. 553 (D.C.Mass.1956), aff'd 241 F.2d 787 (1 Cir. 1957), cert. den. 355 U.S. 817, 78 S.Ct. 21, 2 L.Ed.2d 34 (1957). There the District Court found that, although Congress had the constitutional power to authorize the federal courts to enforce such quasi-legislative arbitration provisions, there remained the question of whether the Congress had done so. The court then looked to the United States Arbitration Act as the basis for determining if Congress had in-

tended for such quasi-legislative arbitration to be enforced, and said:

"Hence assuming the constitutionality of a statute which would authorize Federal Courts to enforce legislative awards of arbitrators, I nonetheless conclude that the present United States arbitration statute does not seek to reach that constitutional limit, but is concerned only with the enforcement of quasi-judicial awards directed at the ascertainment of facts in a past controversy and at the prescription of recoverable damages or other suitable awards for that which has been broken not for that which is to be built." (141 F.Supp. at 557)

In *Potter Press,* being a case of first impression, the court moved warily and followed the narrow view that if Congress had not included this type of arbitration in the legislation already existing to enforce arbitration, i. e., United States Arbitration Act, then § 301 of the Labor Management Relations Act conferred on the federal courts no jurisdiction to grant a remedy in this unexplored area.

On appeal the First Circuit affirmed, 241 F.2d 787 (1 Cir. 1957), and stated, as determined by their opinion in Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Company, 233 F.2d 85 (1 Cir. 1956), that the federal district court was empowered by the co-joint authority of § 301 of the Labor Management Relations Act and of the United States Arbitration Act to decree specific performance in a matter involving grievance arbitration.

Both decisions taken as a whole indicated that § 301 cannot stand alone to confer jurisdiction and provide a proper remedy in this type case; therefore, the United States Arbitration Act must be looked to as the basis for such a remedy,

and since it does not envisage such quasi-legislative arbitration the court has no jurisdiction.

Defendant cites other decisions [1] which approved the holding in *Potter Press.* The proper weight to be given these decisions on the point in question must be dictated by the present applicability of the rationale in *Potter Press.*

Plaintiff counters that in the *Potter Press* decision, the court looked for a statutory predicate upon which to base enforcement of the arbitration covenant, and in finding that the United States Arbitration Act did not contemplate this character of dispute, the court determined that it was without authority to enforce the arbitration provision. The plaintiff contends that in doing so, the court proceeded upon the erroneous conception that in enforcing an arbitration covenant, the court had statutory power only, thereby rejecting the proposition that once a court acquires jurisdiction of an action by reason of § 301, the traditional equitable powers of a United States Court are available to enforce contract rights asserted thereunder.

To undermine this restrictive line of reasoning in *Potter Press* and to show it as a misconception, plaintiff points to Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). This decision specifically held that the authority of the federal courts to enforce arbitration agreements is not derived from any state or federal law (to include the U. S. Arbitration Act), but that such authority can be determined by reference to § 301 itself, and the National Labor policy expressed therein, together with the traditional equitable powers of the federal district courts. Even though only grievance arbitration was directly in question, the court concluded that the power to grant a remedy under § 301 was found in §

---

[1]. International Typographical Union Local No. 21 v. San Francisco Newspaper Printing Co., 247 F.Supp. 963 (N.D.Cal. 1965); Austin Mailers Union No. 136 v. Newspapers, Inc., 226 F.Supp. 600 (W. D.Tex.1963), aff'd 329 F.2d 312 (5 Cir. 1964), cert. den. 377 U.S. 985, 84 S.Ct. 1894, 12 L.Ed.2d 753 (1964); In Re Valencia Baxt Express Co., 199 F.Supp. 103 (Puerto Rico 1961); Couch v. Prescolite Manufacturing Corp., 191 F.Supp. 737 (W.D.Ark.1961).

301 alone; consequently, the courts must fashion a body of federal substantive law without reference to other statutory authority.

The rationale of *Potter Press* is further diminished when the decision in the companion case of *Lincoln Mills* is considered. In General Electric Company v. Local 205, U. E., 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957), the court affirmed the First Circuit but distinguished their reasoning, Justice Douglas stating:

"It (the Circuit Court) then held that while § 301(a) of the Labor Management Relations Act of 1947 gave the District Court jurisdiction of the cause, it supplied no body of substantive law to enforce an arbitration agreement governing grievances. But it found such a basis in the United States Arbitration Act, which it held applicable to these collective bargaining agreements. It accordingly reversed the District Court judgment and remanded the cause to that court for further proceedings.

"We affirm that judgment and remand the cause to the District Court. We follow in part a different path than the Court of Appeals, though we reach the same result as indicated in our opinion in No. 211, Textile Workers Union of America v. Lincoln Mills of Alabama * * *. We think that § 301(a) furnishes a body of federal substantive law for the enforcement of collective bargaining agreements * * *." (353 U.S. at 548, 77 S.Ct. at 922, 1 L.Ed.2d at 1029)

Thereby the Supreme Court specifically stated that the U. S. Arbitration Act should not provide the basis for a decision involving arbitration, but that such was furnished by § 301 standing alone.

Even though these Supreme Court rulings dealt with grievance arbitration and not arbitration of the terms of future contracts, the rationale in one would of necessity color the other. If § 301 can independently provide jurisdiction and a remedy for grievance (quasi-judicial) arbitration, then reasonably it could provide the needed authority and remedy for the arbitration of renewal contract terms (quasi-legislative arbitration).

Recent decisions cited by the plaintiff have questioned the rationale of *Potter Press* and have found it inapplicable. Division No. 892, etc. v. M. K. & O. Transit Lines, 210 F.Supp. 351 (N.D. Okla.1962), rev. on other grds. 319 F.2d 488 (10 Cir. 1963), cert. den., 375 U.S. 944, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963); Builders Association v. Kansas City Laborers, etc., 326 F.2d 867 (8 Cir. 1964), cert. denied, 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964); A. Seltzer & Co. v. Livingston, 253 F.Supp. 509 (S.D. N.Y.1966) aff'd 361 F.2d 218 (2 Cir. 1966).

In *M. K. & O. Transit Lines*, the defendant employer contended that it was not required to negotiate a new contract and that such could not be arbitrated regardless of the provisions of a previous agreement. The defendant relied principally on *Potter Press* and to this the Court stated:

"This case (*Potter Press*) is not in point and is at odds with the rulings of the Supreme Court * * *. This Court has the power to enforce the arbitration provisions of the contract in question even though such enforcement establishes future labor conditions * * *." (210 F.Supp. at 356)

The Circuit Court found it unnecessary to rule on the applicability of *Potter Press*, because, in reversing the District Court decision, it determined that the union had terminated the contract requiring the employer to arbitrate. Nonetheless, the court noted in passing:

"Even though we believe that the parties contemplated that there might be arbitration of the conditions of a new contract, we do not reach the question of the court's authority or jurisdiction to require such arbitration. It may well be on the latter question that the rationale of the decision in the *Potter Press* case should be reappraised in the light of subsequent decisions of the Supreme Court. Our resolution of this important problem,

however, should await a case in which it is squarely presented * * *." (319 F.2d at 490)

In *Builders Association,* the defendant contended that the dispute in question (terms of a new trust agreement) was not arbitrable because it concerned the creation of a new agreement, relying upon the decision in *Potter Press.* After discussing the case the court answered:

"It was held (in *Potter Press*) that the federal court was without authority to compel arbitration of the dispute. In the light of what we conceive to be the teachings of the Supreme Court and the cases to which we have referred, we are convinced that the decision in Boston Printing Pressmen's Union v. Potter Press is far too weak a peg upon which to hang a reversal of the judgment in the instant case." (326 F.2d at 870)

The most recent case discussing the doctrine of *Potter Press* is *Seltzer & Co.* There the dispute concerned an agreement to enter into a labor contract on the same terms contained in the majority of the union's contracts with other employers and to arbitrate any dispute concerning these terms. The court ultimately decided that the case probably did not involve arbitration of future terms, but not until after it disposed of the plaintiff employers' contention that the *Potter Press* decision relieved it of any duty to arbitrate. The court in discussing this contention noted that the *Potter Press* doctrine had been criticized by text writers,[2] and also pointed out that subsequent to *Potter Press* the Supreme Court had decided the *Steelworkers* cases[3] which emphasized the importance of arbitration as the most appropriate method of resolving employees' grievances. After acknowledging that the recent Supreme Court decisions did not directly touch upon the point decided in *Potter Press* and after citing and discussing the *Builders Association* and the *M. K. & O. Transit* cases, the court reached the conclusion that *Potter Press* is no longer controlling.

The *Seltzer* case was affirmed by the Second Circuit in a per curiam opinion. Consequently aligning the Second Circuit with the Eighth Circuit in questioning the present applicability of the *Potter Press* decision.

Even viewing the defendant's reliance on the rationale of the decision in *Potter Press* from the most favorable aspect, its persuasive force has certainly been diminished by the foregoing decisions. In rulings subsequent to *Potter Press,* the Supreme Court has broadened the scope of § 301 and has encouraged arbitration as a desirable alternative to industrial strife. The parties by the terms of their agreement had freely determined to substitute arbitration for economic warfare in settling labor disputes and had explicitly agreed to arbitrate any differences concerning future contract terms.

This Court therefore rejects the rationale of the *Potter Press* decision and determines that § 301 of the Labor Management Relations Act confers on the Court jurisdiction to compel quasi-legislative as well as quasi-judicial arbitration where such has been voluntarily agreed upon by the parties.

CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. The contract provision requiring arbitration remains valid and requires the defendant to arbitrate with the plaintiff existing unresolved differences regarding the contract.

---

2. See Note, Quasi Legislative Agreement, 64 Col.L.Rev. 109, 123 (1964); Katz, Arbitration—Favorite Child of Preemption, N.Y. Univ. 17th Annual Conf. on Labor, 27, 34–5, 1964.

3. United Steel Workers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steel Workers of America v. Warrior & Gulf Nav. Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steel Workers of America v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424 (1960).

3. Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185, confers on the Court jurisdiction to compel quasi-legislative as well as quasi-judicial arbitration.

4. There is no evidence of damages before the Court arising from the failure of the defendant to arbitrate.

Accordingly an order and judgment will be entered.