DIVISION NO. 892, AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, Plaintiff,

v.

M. K. & O. TRANSIT LINES, INC., Defendant.

Civ. No. 5429.

United States District Court
N. D. Oklahoma.
Nov. 8, 1962.

Dyer, Powers & Gotcher, Tulsa, Okl., for plaintiff.

Zimring, Gromfine & Stunstein, Washington, D. C., Robert A. Huffman, James L. Kincaid, Tulsa, Okl., and Karl H. Mueller and Mueller & Mueller, Fort Worth, Tex., for defendant.

BOHANON, District Judge.

This is an action brought under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, commonly known as the "Taft Hartley Act," regarding a refusal by the defendant to arbitrate under a collective bargaining agreement between the parties.

Both parties have moved for Summary Judgment.

The plaintiff Union and the defendant Corporation entered into a labor agreement on the 24th day of July, 1959, for a term extending until June 30, 1962.

Article 43, Section 1 of the Labor Agreement, provides:

"This Agreement shall be in effect from July 1, 1959 to June 30, 1962, both inclusive, and from year to year thereafter, except that at the expiration of the contract term or any renewal thereof either party may terminate the Agreement by giving notice to the other party of its intentions to terminate the Agreement or to negotiate changes in its terms. Notice of the intention of either party to terminate the contract or negotiate changes in its terms shall be in writing and be delivered to the other party not more than ninety (90) and not less than sixty (60) days before the expiration of the contract term or any renewal thereof. If such notice is given by either party, it shall also contain an offer to meet and confer with the other party for the purpose of negotiating a new contract."

In accordance with the requirements of Article 43, supra, plaintiff, on April 27, 1962, gave notice to the defendant of the Union's desire to negotiate "changes, additions, modifications, deletions and whatever the case may be in the terms of a new contract * * *"[1]

The parties thereafter met and attempted to negotiate the terms of the

[1]. "April 27, 1962
"Mr. W. P. Hicks, Vice-Pres.
M. K. & O. Transit Lines, Inc.
319 South Cincinnati
Tulsa, Oklahoma
"Dear Mr. Hicks:
"As provided in the existing Agreement by and between the M. K. & O. Transit Lines, Inc., and Division Number 892 of the Amalgamated Association of Street Electric Railway and Motor Coach Employees of America, and in accordance

with the existing laws this is the official notice of this Division's desire to negotiate changes, additions, modifications, deletions and whatever the case may be in the terms of a new contract by and between M. K. & O. Transit Lines, Inc., and this Division.
"In the event that no agreement has been reached by midnight of June 30, 1962, and if arbitration has not been agreed upon this will also serve due notice that the entire contract now in effect is to

new or changed contract, but were unable to reach an agreement. There is nothing in the record to indicate that the parties did not negotiate in good faith.

Failing to reach an agreement on the request or demand for changes in the contract, plaintiff, on June 20, 1962, made a demand upon the defendant for arbitration of their differences, as provided by Article 7 of the Agreement.[2]

The defendant declined and refused to arbitrate in accordance with the requirements of Article 7 of the Labor Agreement, and this action was commenced on June 29, 1962, prior to the expiration of the Labor Agreement, to compel specific performance of the arbitration provisions of the contract.

It should be noted also that the contract provided against strikes and lockouts.[3]

be terminated as of midnight June 30, 1932.

"The Officers of this Division are ready and willing to meet and treat with the Representatives of the Company for the purpose of negotiating a new contract on a date and at a place that is agreeable to both parties.

"Yours very truly,
/s/ C. E. Wilson
C. E. Wilson, Pres.
Division No. 892
/s/ T. A. Wilkins
T. A. Wilkins, Fin-Sec.
Division No. 892

"CEW/pls
ociu #330
afl-cio"

2. "ARTICLE 7
ARBITRATION AND ARBITRATION
PROCEDURES

"SECTION 1. All grievances, disputes and differences between the UNION and COMPANY including changes, additions and modifications to any agreement which cannot be resolved by negotiations between the two parties, shall be determined by arbitration as hereinafter provided:

"First: Within five (5) days after either party shall have duly served a demand for arbitration upon the other party, each party shall:

"(a) Appoint one person to serve as its member of the Board of Arbitration.

"(b) Notify each other of such appointment in writing.

"Second: The arbitrators so appointed by the Union and the Company shall meet within five (5) days and endeavor to settle the dispute in question. If they fail to do so in a single conference, they shall proceed as quickly as possible to select a third arbitrator, who, when so selected and appointed, shall act as Chairman of the Board of Arbitration. In the event the two arbitrators fail to agree upon a third arbitrator within five (5) days after the adjournment of the conference as above referred to, they shall re-

quest the Director of Federal Mediation and Conciliation, U. S. Department of Labor, to submit a list of five (5) names of arbitrators from which the parties shall select their third arbitrator. Within five (5) days after receiving such list, the parties shall each strike two names from the list in the following manner: The Union shall strike one name and the Company shall strike a second name. The Union shall then strike a third name and the Company shall strike a fourth name. The person thereafter remaining on the list shall be and become the third arbitrator.

"The Board of Arbitration shall meet and organize in Tulsa, Oklahoma, within thirty (30) days after the third arbitrator was so selected and shall continue to meet every day and hear any and all evidence and arguments related to the case and shall render a decision in writing to both parties within ten (10) days. All arbitration proceedings shall be held in Tulsa, Oklahoma.

"The decision of a majority of the Board of Arbitration shall become final and binding on both parties when delivered to them in writing.

"The parties shall pay the fees and expenses of its own arbitrator. The fees and expenses of the third arbitrator as well as other joint expenses incidental to the arbitration shall be paid equally by the parties.

"SECTION 2. The time limits set forth in this Article shall exclude Saturdays, Sundays and holidays."

3. "ARTICLE 8
STRIKES AND LOCK-OUTS

"SECTION 1. It is agreed by the parties that there shall be no strike by the ASSOCIATION, nor lock-out by the COMPANY during the life of this Agreement. Since it is likewise the intent of the parties that arbitration will be resorted to in the event no agreement on grievances, new or changed provisions is reached for the contract year following the year covered by this Agreement or any ex-

The defendant contends:

(a) That this Court has no jurisdiction over this defendant and this action.

(b) That it has complied with the provisions of the contract and that it is under no obligation to arbitrate terms of a new contract.

(c) That the Union's letter of April 27, 1962 terminated the contract as of midnight June 30, 1962, and plaintiff thereby terminated any right to enforce arbitration.

(d) That the plaintiff charges the defendant of an unfair labor practice in violation of 29 U.S.C.A. § 158(a) (5), and therefore only the National Labor Relations Board has jurisdiction to hear the complaint, and finally that any attempt to force defendant to submit to arbitration violates defendant's rights under the Fifth Amendment.

The Union's proposal for a new contract, Exhibit C to defendant's Answer, requests many changes not in the existing contract, including vacation time, pay for holidays, increased hourly wages, and for a comprehensive group insurance coverage. There are other changes and modifications proposed, but I do not feel that it would be beneficial or helpful to enumerate each proposed change, addition or modification.

Counsel for the respective parties have furnished the Court excellent briefs in support of their respective contentions.

■ The Court is of the opinion that it has jurisdiction to determine this controversy by virtue of Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, as interpreted by the Supreme Court and lower federal Courts. In Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, decided June 3, 1957, involving a controversy of grievances under a collective bargaining agreement concerning workloads and work assignments of the Union members, the Union requested arbitration and the employer refused. The Court, at page 451, 77 S.Ct. at page 915 of the opinion, says:

"From the face of the Act it is apparent that § 301(a) and § 301 (b) supplement one another. Section 301(b) makes it possible for a labor organization, representing employees in an industry affecting commerce, to sue and be sued as an entity in the federal courts. Section 301(b) in other words provides the procedural remedy lacking at common law. Section 301(a) certainly does more than that. Plainly, it supplies the basis upon which the federal district courts may take jurisdiction and apply the procedural rule of § 301(b)."

The Court then goes ahead to say:

"The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws."

And at page 457, 77 S.Ct. at page 918:

"It is not uncommon for federal courts to fashion federal law where federal rights are concerned. See Clearfield Trust Co. v. United States, 318 U.S. 363, 366–367 [63 S.Ct. 573, 87 L.Ed. 838]; National Metropolitan Bank v. United States, 323 U.S. 454 [65 S.Ct. 354, 89 L.Ed. 383]. Congress has indicated by § 301(a) the purpose to follow that course here. There is no constitutional difficulty. Article III, § 2, extends the judicial power to cases 'arising under * * * the Laws of the United States * * *.' The power of Congress to regulate these labor-management controversies under the Commerce Clause is plain. Houston & Texas R. Co. v. United States, 234 U.S. 342 [34 S.Ct. 833, 58 L.Ed. 1341]; Labor Board v. Jones & Laughlin Corp., 301 U.S. 1

tension of it, it is agreed that during such periods of negotiations or arbitration proceedings there will be no strike or lockout."

[57 S.Ct. 615, 81 L.Ed. 893]. A case or controversy arising under § 301(a) is therefore, one within the purview of judicial power as defined in Article III."

And at page 458, 77 S.Ct. at page 919 the Court said:

"The congressional policy in favor of enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit them to the requirements of § 7 of the Norris-LaGuardia Act."

 Later the Supreme Court on June 20, 1960, decided three cases respecting arbitration clauses in labor agreements. These decisions, United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, United Steelworkers of America v. American Manufacturing Company, 363 U.S. 554, 80 S.Ct. 1343, 4 L.Ed.2d 1403, and United Steelworkers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, support the proposition that an order to arbitrate grievances should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, and all doubts should be resolved in favor of coverage. In the Warrior and Gulf decision, at page 582 of 363 U.S., at page 1353 of 80 S.Ct. the Court said:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made."

Thus from the decisions above quoted, the power of the Courts to enforce provisions of labor contract for arbitration is not violative of Article III, Section 2 of the Constitution, and that the Courts, in a proper case, should take jurisdiction of and decide a case under Section 301 and fashion its decree according to federal law as expressed by the Courts and Congressional policy.

With these pronouncements from the Supreme Court, this Court should construe Article 7, Section 1 of the Labor Agreement in the case at bar which provides:

"All grievances, disputes and differences between the Union and Company, including changes, additions and modifications to any agreement which cannot be resolved by negotiations between the two parties, shall be determined by arbitration as hereinafter provided:"

The other provisions of Article 7 are set forth in footnote 2.

This arbitration clause is clear and unambiguous; at least, the parties to this action do not contend that there is any ambiguity in the clause. The Court must assume that the parties knew the meaning and purport of the language used in this Article. To me it simply means that if a dispute arises as to any grievance or with respect to changes, additions or modifications to the contract, the parties must submit to arbitration if they cannot otherwise resolve their differences by negotiations.

The defendant asserts what I think to be an untenable defense; that is, that the Union's right to demand arbitration expired by reason of the notice of termination contained in the letter shown in full in footnote 1. It should be noted that the Union, by this letter dated April 27, 1962, more than 60 days before the expiration of the contract, gave notice to the defendant of its desire "to negotiate

*changes, additions, modifications, deletions* and whatever the case may be in the terms of a new contract. * * * " And the letter further offered to meet with representatives of the company for the purpose of negotiating a new contract. Negotiations having failed, the Union demanded arbitration, and the Company refused to arbitrate. These demands of the Union and the refusal of the Company all took place while the contract was in force and effect and in accordance with the terms of the contract, except the defendant's refusal to arbitrate, which it was obliged to do.

■ The right to arbitration does not expire with the expiration of the labor contract. United Steelworkers of America v. Enterprise Wheel and Car Corporation, D.C., 168 F.Supp. 308, affirmed 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; Botany Mills, Inc. v. Textile Workers Union of America, 50 N.J.Super. 18, 141 A.2d 107; Potoker v. Brooklyn Eagle, 2 N.Y.2d 553, 161 N.Y.S.2d 609, 141 N.E.2d 841, cert. denied 355 U.S. 883, 78 S.Ct. 151, 2 L.Ed.2d 113. However, the matters in dispute in the case at bar arose during the term of the Labor Agreement.

Defendant, in paragraph 5 of its Answer, says:

"That this Court has no jurisdiction under the statutes of the United States and particularly under Title 29, U.S.C. 185, to order this defendant to abdicate its right to bargain and turn over the negotiations of a new contract to arbitrators, *regardless of the provisions of said labor agreement.*" (Emphasis provided.)

The defendant by the italicized statement tacitly admits that the provisions of the Labor Agreement mean exactly what I have heretofore indicated.

■ The contention of the defendant is that it was not required by the contract to negotiate a new agreement, but this is precisely what the defendant agreed to do. Any change, addition or modification of an agreement constitutes a new agreement, especially as to those provisions of the agreement which have been changed or modified.

In presenting this matter to the Court, the defendant relies principally upon Boston Printing Pressmen's Union v. Potter Press, D.C., 141 F.Supp. 553, 241 F.2d 787 (1 Cir.). This case is not in point and is at odds with the rulings of the Supreme Court, supra. The Court refused to follow Section 301, supra, but based its decision on the provisions of the United States Arbitration Statute, saying:

"We agree with the district court that, assuming the Constitutionality of a statute under which the Congress, with its eyes open, might authorize the federal Courts to enforce legislative awards of arbitrators, nevertheless 'the United States Arbitration Statute does not seek to reach the Constitutional limit, but is concerned only with the enforcement of quasi judicial awards directed in the ascertainment of facts in a past controversy * * * ' "

This Court has the power to enforce the arbitration provisions of the contract in question even though such enforcement establishes future labor conditions, and to shape its decree to meet the existing circumstances.

Plaintiff's Motion for Summary Judgment is granted.

Defendant's Motion for Summary Judgment is denied.