**A. SELTZER & CO., Inc., Crane-Gallo Artist Suppliers Inc., M. M. Michaels Inc., Plaza Artist Materials, Inc., Irving Berlin Inc., and Eagle Supply Company, Plaintiffs,**

v.

**David LIVINGSTON, as President of District 65, RWDSU, AFL–CIO, an unincorporated Association of more than seven members, the "Union", Defendant.**

**No. 65 Civ. 2707.**

United States District Court
S. D. New York.
Jan. 18, 1966.

Herbert A. Lien, New York City, for plaintiffs-appellants.

Eugene G. Eisner, New York City, for defendants.

McLEAN, District Judge.

This is a motion to restrain defendant Union from proceeding with arbitration under an agreement between it and certain of the plaintiffs. The motion was brought on by an order to show cause which contained a temporary restraining order staying the arbitration pending the determination of the motion. Defendant has moved to dissolve the temporary restraining order and to dismiss the complaint.[1]

The complaint alleges that this court has jurisdiction of this action under Section 301 of the Labor-Management Relations Act (29 U.S.C. § 185) "as imple-

---

1. Plaintiffs' motion was originally returnable on Sept. 14, 1965. It was thereafter adjourned six different times and was finally argued before Judge Bryan on Dec. 16, 1965, at which time defendant's motion was also argued. Judge Bryan was taken ill before he decided the motions and on December 29, 1965 they were referred to me by the Chief Judge for hearing and determination. I heard argument on them on January 4, 1966.

mented by the Federal Declaratory Judgment Act." Its other allegations may be summarized as follows:

Plaintiffs are engaged in interstate commerce. On or about April 30, 1965, each of the plaintiffs, except Eagle Supply Co., signed a "recognition form agreement" with defendant Union.[2] That document recited that "it has been demonstrated to the Employer's satisfaction that the Union represents a majority of its employees." It went on to provide that the employer recognizes the Union as the sole collective bargaining agent for its employees, that the employer agrees to accept the terms and conditions set forth in collective bargaining contracts between the Union and "a majority of shops under agreement with it," and that in the event the parties fail to agree "as to which terms and conditions are actually in effect in the majority of shops under contract with District 65," that issue shall be submitted to arbitration under the rules of the American Arbitration Association.

The complaint alleges that the Union refused to show to plaintiffs "proof of designation" (i. e., proof that plaintiffs' employees actually belong to the Union), and that the Union insisted that the employers sign the document without change "on the threat of immediate pickets and stoppage of shipments." It alleges that after negotiations, the plaintiffs and the Union failed to agree on terms and conditions of employment, including wages, etc., and that on July 27, 1965, defendant Union demanded arbitration. It alleges that on July 29, 1965 and on August 5, 1965, another union, not a party to this action, Local 810 of the Steel, Alloys & Hardware Fabricators and Warehousemen, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, filed with the National Labor Relations Board a petition for determination of representation of plaintiffs' employees, that de-

fendant Union advised the Board that it claimed that its contract with plaintiffs was a bar to Local 810's petition, and that the Board ordered a hearing for August 25, 1965 which was subsequently adjourned to September 7, 1965. The complaint alleges that on August 31, 1965, Local 810 filed with the Board unfair labor practice charges against plaintiffs alleging that plaintiffs had violated Section 8(a) (1) and Section 8(a) (2) of the National Labor Relations Act by signing the "recognition agreement" with defendant and by going forward with the arbitration. It alleges that "a justiciable controversy" has arisen as to the validity of the recognition agreement and as to the "propriety of proceeding in face of the charges." The relief asked is that the court enter a declaratory judgment determining the rights of the parties and staying the arbitration proceedings "until after the National Labor Relations Board has determined whether proceedings to arbitrate would violate the National Labor Relations Act."

Plaintiffs' moving affidavits, verified on September 7, 1965, contain allegations which are substantially the same as those of the complaint. Defendant's opposing affidavit, dated December 2, 1965, points out that there has been a change in the situation since this action was begun in September. On October 5, 1965, plaintiffs signed a collective bargaining agreement with Local 810 in which plaintiffs recognized that union as the representative of their employees. Plaintiffs thus have signed an agreement with each of the competing unions, recognizing each as the representative of plaintiffs' employees. Local 810 thereupon withdrew its unfair labor practice charge, although Local 810's petition asking the Board to determine which union in fact does represent the employees apparently was not withdrawn. To add to the confusion, defendant Union on October 7, 1965, filed with the

---

2. Inasmuch as Eagle did not sign the agreement and defendant Union makes no claim against it, it is hard to see why it was named a plaintiff in this action. References in this opinion to "plaintiffs" will not include Eagle.

Board an unfair labor practice charge against plaintiff, and on November 24, 1965, the Board issued a complaint on that charge, alleging that plaintiffs have violated Sections 8(a) (1) and 8(a) (2) of the Act by signing and enforcing the collective bargaining agreement with Local 810 notwithstanding the fact that there was pending "a valid question concerning the representation" of plaintiffs' employees. The Board set this complaint down for a hearing before a Trial Examiner on January 17, 1966.

■ The first question to be determined is whether this court has jurisdiction of the subject matter of this action. The declaratory judgment statute, 28 U.S.C. § 2201, is not a jurisdictional statute. It merely empowers the court to grant declaratory relief in an action if it has jurisdiction of that action by virtue of some other statute. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

Consequently, if this court has jurisdiction, it must rest on Section 301(a) of the Act (29 U.S.C. § 185(a)). That section confers upon the district court jurisdiction of "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."

Plaintiffs appear to argue that the "recognition agreement" which they signed with defendant is not a "contract." If this is so, plaintiffs have argued themselves out of court.

Plaintiffs cite Boston Printing Pressmen's Union No. 67 v. Potter Press, 241 F.2d 787 (1st Cir. 1957), cert. denied, 355 U.S. 817, 78 S.Ct. 21, 2 L.Ed.2d 34 (1957) and Austin Mailers Union No. 136 v. Newspapers, Inc., 329 F.2d 312 (5th Cir. 1964), cert. dismissed, 377 U.S. 985, 84 S.Ct. 1894, 12 L.Ed.2d 753 (1964). In Boston Printing, a union sued under Section 301(a) to compel arbitration under an agreement which empowered the arbitrator to determine "all questions regarding a new contract and scale to become effective at the expiration of this Agreement." The arbitrator was to be asked to decide what certain contract terms, notably those relating to vacations, were to be in the future. The court affirmed a dismissal of the complaint on the ground that such a "prospective or quasi-legislative" arbitration was not within the scope of the United States Arbitration Act (9 U.S.C. § 1 et seq.) which provides for arbitration of a controversy arising out of a "contract" involving commerce.

Austin Mailers followed Boston Printing. An action by a union under Section 301(a) to compel arbitration was dismissed. One of the two grounds of dismissal was that the court lacked jurisdiction because the arbitration clause provided for arbitration of "all disputes arising during the negotiations of any subsequent agreement." The court held that Section 301 does not empower the federal courts to compel arbitration pursuant to a contract between an employer and a labor organization as to future contractual provisions.

The textwriters have criticized the Boston Printing doctrine. See Note, Quasi-Legislative Arbitration Agreements, 64 Colum.L.Rev. 109, 123 (1964); Katz, Arbitration—Favored Child of Preemption, New York University 17th Annual Conference on Labor 27, 34–5 (1964).

Since Boston Printing was decided, the Supreme Court has decided the Steelworkers cases, which have emphasized the importance of arbitration as the most appropriate method of resolving employees' grievances. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Also since Boston Printing, the Supreme Court has decided Retail Clerks Intern. Ass'n v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962), which gave a broad construction

to the word "contracts" in Section 301 (a). The word is not limited to collective bargaining agreements, nor is it limited to agreements with unions which are the recognized exclusive bargaining representative of an employer's employees.

> "It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them." (369 U.S. at 28, 82 S.Ct. at 548)

These recent Supreme Court decisions do not directly touch upon the question decided in *Boston Printing*. Nevertheless, at least two courts have considered that the attitude which they reflect requires a result on that question directly opposite to that reached in *Boston Printing*. Builders Ass'n of Kansas City v. Greater Kansas City Laborers, etc., 326 F.2d 867 (8th Cir. 1964), cert. denied, 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964); Division No. 892, Amalgamated Ass'n of St., Elec. Ry., etc., Employees v. M. K. & O. Transit Lines, Inc., 210 F.Supp. 351 (N.D.Okl.1962), reversed on other grounds, 319 F.2d 488 (10th Cir. 1963), cert. denied, 375 U.S. 944, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963).

*Builders Ass'n* held that an action can be maintained by a union under Section 301(a) to compel arbitration as to the future terms of a trust agreement to implement a health and welfare plan.

*Division 892* held that a union may maintain an action under Section 301(a) to compel arbitration as to the "changes, additions and modifications" to be made in a labor agreement. The district court specifically held that it had the power "to enforce the arbitration provisions of the contract in question even though such enforcement establishes future labor conditions * * *." (210 F.Supp. at 356). The Court of Appeals found it unnecessary to pass upon the question since it held that the union had terminated the contract which contained the arbitration clause, thereby relieving the employer of any obligation which it otherwise would have had to arbitrate. The court said,

however, that it might "well be" that the rationale of the decision in *Boston Printing* "should be reappraised in the light of subsequent decisions of the Supreme Court." (319 F.2d at 490).

In my opinion, these later decisions are controlling here. Particularly in the light of the broad interpretation which the Supreme Court has given to the word "contracts" in Retail Clerks Intern. Ass'n v. Lion Dry Goods, supra, I believe that the document signed by the parties in this case is a contract within the meaning of the statute, even if we assume, as plaintiffs do, that it involves a decision by an arbitrator as to future terms. Moreover, it is doubtful whether the document does involve such a determination. The arbitrator is not directed to invent a wage scale and other terms and conditions of employment. His task is merely to ascertain what terms and conditions "are actually in effect in the majority of shops under contract with District 65." This is a question of fact, which would appear to be susceptible of determination by an arbitrator upon the basis of evidence as to the provisions of contracts already in existence.

The question remains whether this action is one for a "violation" of a contract, within the meaning of Section 301 (a). Strictly speaking, it is not, for it can hardly be said that the Union has "violated" the contract by insisting upon the arbitration which the contract contemplates and requires. What plaintiffs are really seeking is an injunction restraining defendant from proceeding to arbitrate in accordance with the contract's terms.

It is clear that if the Union had sued to compel arbitration under this contract, this court would have had jurisdiction of the action under Section 301 (a). Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

In recent years the courts have tended to say that Section 301(a) should work both ways, and that since it confers jurisdiction of an action by a union to

compel arbitration, it should be construed to confer jurisdiction as well of an action by an employer to avoid arbitration. Thus, in Black-Clawson Co., Inc. v. International Ass'n of Machinists, 313 F.2d 179 (2d Cir. 1962), it was held that the court had jurisdiction of an action by an employer for a declaratory judgment determining that the arbitration clause in a union contract did not cover the particular controversy in question. And in Application of Contessa Lingerie, Inc., 227 F.Supp. 37 (S.D.N.Y.1964), I held that this court had jurisdiction under Section 301(a) of a petition of an employer to stay arbitration on the ground that the petitioner was not a party to the contract which contained an arbitration clause. It requires little or no extension of this principle to conclude that jurisdiction exists when the employer's claim is that arbitration should be stayed because the contract containing the arbitration clause is invalid. I hold, therefore, that this court has jurisdiction under Section 301(a) of the subject matter of the present action.

I turn now to the merits of plaintiffs' motion for a stay of arbitration and of defendant's counter motion to dismiss the action. Defendant's notice of motion does not specify the ground of the motion or the rule under which it is made. I will treat it as a motion for summary judgment.

Plaintiffs seek in their complaint two different types of relief: (1) a declaration that the contract is invalid, and (2) a stay of arbitration. The basis of their claim of invalidity of the contract is their contention that an employer and a union cannot make an enforceable agreement to arbitrate the question of what the future contractual provisions shall be. I have rejected this contention for the reasons heretofore stated. Thus, as far as the arbitration clause is concerned, the contract is valid, and plaintiffs are not entitled to the declaration which they seek.

Plaintiffs do not seem to attack the validity of the contract on any other ground. There is an allegation in the complaint, to be sure, that defendant refused to show plaintiffs "proof of designation." Defendant denies this and the contract itself recites that "it has been demonstrated to the Employer's satisfaction that the Union represents a majority of its employees." But if we assume that plaintiffs' allegation is true, it is immaterial. Refusal to furnish proof of representation is not such coercion or fraud as to vitiate the contract. The contract is still a contract, enforceable under Section 301(a), whether or not the Union is entitled to recognition as the exclusive representative of the employees. Retail Clerks Intern. Ass'n v. Lion Dry Goods Inc., supra.

Nor does the allegation that the Union threatened "immediate pickets and stoppage of shipments," even if true, render the contract invalid and unenforceable. Cf. National Labor Relations Board v. Drivers etc., Local Union, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710 (1960); Line Drivers Local No. 961, etc. v. W. J. Digby Inc., 218 F.Supp. 519 (D. Colo.1963), aff'd, 341 F.2d 1016 (10th Cir.1965).

When we consider the second type of relief which plaintiffs seek, the stay of arbitration, their case is no better. At the time this motion was made, now some four months ago, Local 810 had filed with the Board a charge that plaintiffs had committed an unfair labor practice by signing the contract with defendant. Plaintiffs' principal reason for asking this court to stay the arbitration was their concern that to proceed with the arbitration would add support to Local 810's charge. Thus, their complaint alleged that a controversy existed as to "the propriety of proceeding in face of the charges," and their prayer for relief asked for a stay of the arbitration "until after the National Labor Relations Board has determined whether proceeding to arbitrate would violate the National Labor Relations Act."

As a practical matter, plaintiffs have enjoyed a stay for some four months by the device of adjourning their motion and extending the temporary restraining or-

der. In the meantime, Local 810 has withdrawn its charge. Hence, the primary reason which led plaintiffs to make the motion no longer exists.

It is true that the application for a determination by the Board of the representation question is still pending. When the Board will pass upon that question we do not know. In the meantime, the Board will decide whether plaintiffs have committed an unfair labor practice in signing a contract with Local 810 while the representation proceeding is pending. Whatever the Board decides on that issue will not dispose of the representation question, which is a matter within the jurisdiction of the Board which the Board must eventually determine.

▬ In my opinion, the existence of this unresolved question of representation does not afford a sufficient basis for restraining defendant from exercising the right to arbitrate which the contract gives it. Cf. Carey v. Westinghouse, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); Carey v. General Electric, 315 F.2d 499 (2d Cir. 1963), cert. denied, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964).

All that the arbitrator will be asked to do is to complete the contract, so to speak, by writing in the terms and conditions which obtain in a majority of defendant's contracts. Once this is done, plaintiffs will have complete contracts with two different unions. But they have contracts with two different unions now. Plaintiffs have already placed themselves in this inconsistent position, and their position will be no more inconsistent after the arbitration than it is now. Completion of the contract in this fashion will not in any way interfere with the Board in the performance of the work which it is called upon to do. When the Board eventually decides which union actually represents the employees, one of the two inconsistent contracts will inevitably fall. In the meantime, defendant Union should be permitted to complete its contract so that it will be in a position to proceed with it if the Board decides the representation question in its favor.

I conclude that plaintiffs have not made a showing which would justify staying the arbitration called for by the contract which plaintiffs signed. Plaintiffs' motion must therefore be denied.

It also follows that the action should be dismissed. Assuming the truth of its allegations, the complaint does not state a claim for a judgment declaring the contract invalid. And in view of the admitted change in circumstances since the action was begun, plaintiffs are not entitled to a stay. The uncontradicted facts set forth in the affidavits show that there is nothing to try on this question. Since there is no genuine issue as to any material fact, and since defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment is granted.

So ordered.