**BARON BUICK, INC., Plaintiff,**

v.

**LOCAL 259, UNITED AUTOMOBILE AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA UAW, AFL–CIO, Defendant.**

**No. 82 CIV 3566.**

United States District Court, E.D. New York.

May 10, 1983.

---

Putney, Twombly, Hall & Hirson, New York City, for plaintiff; Michael T. McGrath, New York City, of counsel.

Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, for defendant; Larry Magarik, New York City, of counsel.

## ORDER

McLAUGHLIN, District Judge.

On October 28, 1982, the defendant Union requested the American Arbitration Association ("AAA") to determine whether its rights under a collective bargaining agreement have survived a sale of assets by plaintiff's predecessor corporation, Caplan Buick, Inc. ("Caplan") to plaintiff. The Union's effort to compel plaintiff to arbitrate this issue has prompted the plaintiff to commence this action for a permanent stay of arbitration, pursuant to § 301 of the Labor-Management Relations Act ("LMRA"). Defendant has answered by seeking to compel plaintiff to submit to the AAA proceeding.[1] For the reasons developed below, neither party will receive the requested relief. Arbitration will be temporarily stayed, however, pending the completion of discovery.

## FACTS

Defendant, Local 259, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, AFL–CIO ("Local 259" or the "Union") and Caplan were parties to a collective bargaining agreement entered into during August, 1982. That agreement contains two crucial provisions: (1) Section XXVI of the agreement states that the contract is "binding on all parties hereto, their legal representatives and assigns, it being understood that no Employer shall take any action with the

---

1. Defendant originally moved to compel Caplan to arbitrate, as well. Because the arbitration between Caplan and defendant has already taken place, the motion to compel Caplan to arbitrate is moot.

objective of avoiding its obligations under this contract"; and (2) Section XIV provides a broad grievance and arbitration clause covering "any grievance of disputes ... between the Employer and the Union."

There is some conflict as to a series of events that began in August, 1982. On August 4, Caplan and plaintiff, Baron Buick, Inc. ("Baron") drafted a buy-sell agreement. That agreement, which was for the sale of assets only, provided, *inter alia*, that Baron would not "assume the collective bargaining agreements which heretofore have been entered into between the Seller as employer and Local 259 of the UAW and Local 868 of the AFL–CIO." Exhibit A, para. 17, Affidavit of Myron G. Baron. According to plaintiff, the sale was consumated on September 28. The union claims that, on September 28, the Caplan name was abruptly changed from "Caplan Buick" to "Baron Buick," and that its employees were then "locked out," and remained outside picketing for their jobs.

Plaintiff objects to defendant's characterization of the September 28 incident as a lock-out, asserting that Baron simply opened for business and began to hire its employees. Baron claims that the reason it hired only two former Caplan employees was that most of the positions were filled by the time the Caplan employees applied. Plaintiff also argues that, in any event, it had no obligation to hire a single Caplan employee because the collective bargaining agreement between Caplan and the Union did not survive the transfer of assets from Caplan to Baron. Plaintiff's argument raises the central issue: Was the transaction between Caplan and Baron such that the contractual duty to arbitrate survived the change in ownership? If so, Baron must arbitrate this controversy.

Herbert Caplan and his nephew, Myron Baron, were partners of Caplan from 1970 until 1981. Myron Baron is now the sole shareholder of Baron Buick, Inc. Mathew Simpson, who is Baron Buick's service manager, had also been Caplan's service manager from 1975 to 1981.

Local 259 contends that, because of the relationship between the principals of Caplan and Baron, the transfer of assets was not an arm's-length transaction. Local 259 has not yet received all the documents it has requested relating to the sale. Although the Union does not expressly argue that discovery must be completed before this Court can ascertain the nature of the transaction, that argument is implicit in the repeated requests by counsel for the requested documents.

Not surprisingly, Baron's view of the transaction is markedly different. It argues, in essence, that the transaction was an unfriendly one. Under Baron's interpretation of the facts, Simpson and Myron Baron left the company in 1981 because of an internal dispute. Baron also points out that it was compelled to obtain an order from the Supreme Court of New York, Kings County, directing Caplan to specifically perform the sales contract. Under these circumstances, Baron maintains, it is simply not reasonable to regard the transfer of assets as a sham transaction, designed to avoid Caplan's responsibilities under the collective bargaining agreement.

## DISCUSSION

In opposing Baron's motion to permanently stay arbitration, Local 259 has raised several defenses: (1) This Court is without subject matter jurisdiction; (2) No claim has been stated; (3) Baron's action for a stay of arbitration should itself be stayed, pending arbitration; and (4) Baron, as the assignee or alter-ego of Caplan, is bound to arbitrate with the Union.

## LACK OF SUBJECT MATTER JURISDICTION

The Union contends that Baron's position places it on the horns of a dilemma: by asserting that it is not a party to the collective bargaining agreement, Baron has defeated its allegation that jurisdiction is conferred by Section 301 of the Labor-Management Relations Act ("LMRA"). That section contemplates suits "for violation of contracts between an employer and a labor organization ... or between any ... labor

organizations." Local 259 therefore concludes that if, as Baron contends, there is no contract between the Union and Baron, jurisdiction is lacking under Section 301.

I find this argument unpersuasive. An employer may commence a federal court action for a stay of arbitration demanded by a union by contending that "the particular controversy sought to be arbitrated is not, as a matter of federal labor law, covered by the collective bargaining agreement relied upon by the union." *Alameda Room, Inc. v. Pitta,* 538 F.Supp. 1072, 1076 (S.D.N.Y.1982). *Black-Clawson Co. v. Machinists Lodge 355,* 313 F.2d 179, 182 (2d Cir.1962). The court is not divested of jurisdiction by the employer's allegation that no contract even existed between the employer and the union. *A. Seltzer & Co. v. Livingston,* 253 F.Supp. 509 (S.D.N.Y.), aff'd, 361 F.2d 218 (2d Cir.1966); *Application of Contessa Lingerie, Inc.,* 227 F.Supp. 37 (S.D.N.Y.1964). Accordingly, I hold that this Court does have jurisdiction over this controversy under Section 301.

## FAILURE TO STATE A CLAIM

It is difficult to discern the basis for the Union's assertion that Baron has failed to state a claim. Paragraph 10 of the Answer simply states that "[t]he Complaint fails to state a cause of action." This assertion is not pursued in defendant's Memorandum, however. I therefore decline to address the issue, whatever it may be.

## STAYING OF THIS ACTION PENDING ARBITRATION

■ By this defense, defendant appears to request this Court to allow the arbitrator to determine the nature of the relationship between Caplan and Baron. After such a determination, defendant states, the issue of arbitrability could be returned to this Court. In support of the proposition that "the factual questions of substantial continuity of identity are to be decided by the arbitrator, not the court," Reply Memorandum of Local 259 in Opposition to Action to Stay and in Support of Cross-Petition to Compel Arbitration at 18, defendant seeks to rely on the Second Circuit case of *Monroe Sander v. Livingston,* 377 F.2d 6 (2d Cir.1967). I am puzzled, however, by defendant's reliance on *Monroe Sander,* which states the mirror-image of the proposition for which it is cited: "The question of whether there is 'any substantial continuity of identity' between the ... enterprises is to be answered by the Court, not the arbitrator." *Id.* at 12, *citing John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964).

The issue of substantial continuity is one that must be resolved by the Court.

## THE RELATIONSHIP BETWEEN CAPLAN AND BARON

■ As already noted, the central issue is whether Baron, as assignee, is bound by the collective bargaining agreement between Caplan and Local 259. It is undisputed that the sale of assets agreement expressly provided that Baron would not assume the collective bargaining agreement between Caplan and the Union. Therefore, the successor corporation is not bound to arbitrate with the Union, absent the substantial continuity between the predecessor and successor corporations required by *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964):

> The mere existence of the successorship clauses in the bargaining agreements between the Union and [the seller], however, cannot bind [the purchaser], either to the substantive terms of the agreements or to the arbitration clauses thereof, absent the continuity required by *Wiley,* when it is perfectly clear the Company refused to assume any obligations under the agreements.

*Howard Johnson v. Detroit Local Joint, etc.,* 417 U.S. 249, 258 n. 3, 94 S.Ct. 2236, 2241 n. 3, 41 L.Ed.2d 46 (1974).

The Court, accordingly, must hear evidence on the issue as to whether Baron and Caplan are, in fact and in law, one entity.

■ The parties are in substantial disagreement as to the nature of the Caplan-Baron relationship. A complete record must precede judicial characterization of the transaction. That characterization will

doubtless be difficult because only three Supreme Court cases have squarely addressed the issue of substantial continuity, and all have emphasized the significance of the factual circumstances in deciding whether the surviving corporation is obligated to honor the arbitration provision of a collective bargaining agreement entered into between a union and a predecessor corporation. *Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *NLRB v. Burns Security Services,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). A decision on the issue of substantial continuity must therefore await the completion of discovery.

The parties are directed to appear before Magistrate John L. Caden, on Monday, May 23, at 2:30 P.M., for a discovery conference. Under the direction of the Magistrate, the parties are also directed to complete discovery by Thursday, June 30, 1983.

SO ORDERED.